JOHN HENRY BUNTIN, Complainant and Appellant,
v. HEWITT P. MERIWETHER and WILLIAM P.
MERIWETHER, Defendants and Appellants.
—408 S.W.(2d) 667.

Western Section, at Jackson. June 22, 1966.

Certiorari Denied by Supreme Court, November 7, 1966.

George L. Morrison, Jackson, for John Henry Buntin.

William E. Leech and John Van Den Bosch, Jr., Jackson, for Hewitt P. and William P. Meriwether.

BEJACH, J.   In this cause we have before us for construction two separate wills, viz., that of Mrs. Mary

Etta Buntin who died May 2, 1963, and that of John H. Meriwether, Sr., who died March 19, 1956. The defendants, Hewitt P. Meriwether and William P. Meriwether are named as trustees under the will of John H. Meriwether, Sr. and defendant Hewitt P. Meriwether is named as trustee and executor under the will of his sister, Mary Etta Buntin. Mrs. Buntin was the daughter of John H. Meriwether, Complainant, John Henry Buntin, was the son and only child of Mary Etta Buntin and is the nephew of defendants Hewitt P. Meriwether and William P. Meriwether. In this opinion, the parties will be referred to, as in the lower court, as complainant and defendants, or called by their respective names.

Both complainant and defendants have appealed. Complainant, as appellant, complains of the construction placed by the Chancellor on the will of his mother, Mary Etta Buntin, and defendants complain of the construction placed on the will of John H. Meriwether, Sr. Complainant, John Henry Buntin, also complains of the failure of the Chancellor to remove as trustee, under the will of Mary Etta Buntin, the defendant Hewitt P. Meriwether.

Complainant's principal contention is that the defendant Hewitt P. Meriwether, as executor of the will of Mary Etta Buntin, should be required to turn over to him, as surviving owner, certificate of deposit No. 143 issued by the Second National Bank of Jackson, Tennessee, or the proceeds thereof. Said certificate of deposit is for the sum of $21,513.01, payable to the order of Mrs. Howell Buntin or John Henry Buntin. Mary Etta Buntin was the widow, of Howell Buntin. Said certificate which represents funds from the estate of complainant's father, Howell Buntin, was intended by his mother to be his, in the event that he survived her. Complainant seeks the

removal of the trustee under his mother's will, because he claims to be afraid of him, physically and otherwise, and claims that Hewitt P. Meriwether's interest is antagonistic, Hewitt P. Meriwether being appointed trustee with direction to pay to complainant, during his lifetime, $200.00 per month, together with authority to pay additional amounts in his discretion. Hewitt P. Meriwether is one of the residuary beneficiaries of Mrs. Mary Etta Buntin's will, and complainant claims this as an additional ground of conflict of interest. While this cause was pending, Murry Buntin, a cousin of complainant, was appointed conservator for complainant and as such conservator was permitted to become a party to this suit.

Defendants by their cross bill, seek to have the will of John H. Meriwether construed as creating a trust of the property devised to complainant. This contention is based on two provisions of the will of John H. Meriwether, namely, Article IV and Article XIII of same. Article IV, so far as is necessary for consideration herein, is as follows:

"I will and devise to my trustees hereinafter named, the four tracts of real estate hereinafter mentioned in this article of my will to have and to hold the same, in trust, nevertheless, until the death of the last of my sons, W. P. Meriwether and Hewitt P. Meriwether, for the use and the purposes hereinafter set out, * * *

* * * * * *

Throughout the life of the trust hereby created by this article of my will, my trustees shall hold and retain title to the four tracts of land hereinabove mentioned, collecting income, rents, profits and issues therefrom, and after paying all of the taxes, assessments, insur-

ance premiums, and maintenance expenses due on said lands and improvements thereon, and all other expenses incident to the administration of this trust, shall pay, at lease annually, the entire net income therefrom to my wife, Viola Meriwether, for her support and maintenance, in such manner as they in their discretion deem best, contemplating an exercise of judgment and discretion by said trustees as to the time and method of payment and to all other matters incident to the execution of the trust.

Upon the death of my wife or should she predecease me, my said trustees shall pay at least annually, the entire net income derived from the four tracts of land mentioned above, equally to my sons W. P. Meriwether and Hewitt P. Meriwether, or the whole to the survivor.''

Article XIII to the will of John H. Meriwether provides:

''Payments of income or principal to any beneficiary hereunder who is under any legal disability, or who, although not adjudicated incompent is, in the opinion of my trustees, unable properly to administer such income by reason of illness or mental or physical disability, may be made by my trustees for the benefit of any such person for his or her support, maintenance and care, without the intervention of any guardian, conservator or other legal representative, and my said trustees may make such payments to the legally appointed guardian or conservator of any such beneficiary, directly to such beneficiary, or to some near relative, or my trustees may use such income directly for the support, education and maintenance of such beneficiary.''

Article VI of the will of John H. Meriwether devises three tracts of land to his daughter, Mary Etta Buntin, for and during her natural life, and, ''Upon the death of daughter, Mary Etta Buntin, I will and devise the three tracts of land hereinabove mentioned, to her issue. In the event the said Mary Etta Buntin is not survived by issue, then I will and devise said three tracts of land to her heirs at law.''

It is the contention of defendants that by reason of the provisions of Article XIII, the trust created by Article IV includes also the remainder interest of complainant in the lands devised by Article VI, defendants being the trustees named in the will of John H. Meriwether. The Chancellor ruled, however, that the will of John H. Meriwether is clear and unambiguous and creates no trusts except that provided for in Article IV of same, thus holding that defendant was and is entitled to a vested remainder interest in fee simple in and to the three tracts of land devised to his mother for life. The Chancellor held, however, that complainant had not made out a case, either for removal of defendant Hewitt P. Meriwether as trustee under his mother's will, or to have delivered to him the certificate of deposit for $21,513.01.

As appellant in this Court, complainant has filed two assignments of error which complain, respectively, of the Chancellor's ruling denying to him the certificate of deposit for $21,513.01, and of the refusal of the Chancellor to remove Hewitt P. Meriwether as trustee under the will of Mary Etta Buntin.

As appellants, defendants have filed nine assignments of error. The first three of their assignments complain of the ruling of the Chancellor that the only trust created by the will of John H. Meriwether, Sr. was that created

by Article IV of said will, and in holding that Article XIII of said will does not give the trustees control over the remainder interest in the land devised to complainant, John Henry Buntin. The other six assignments of error complain of rulings by the Chancellor excluding testimony offered by defendants which they claim would have thrown light on the will of John H. Meriwether, Sr., and would have entitled them to have the will construed as creating a trust for the benefit of the remainder interest of John Henry Buntin.

We will first dispose of the assignments of error filed by defendant as cross complainant and then take up the assignments of error filed by complainant.

As was stated in the memorandum opinion of the learned Chancellor: ''This case involves three issues: (1) The construction of the last will and testament of J. H. Meriwether, (2) The ownership of a certificate of deposit in the principal amount of $21,513.01, and (3) Whether or not Hewitt P. Meriwether, trustee of a testamentary trust created by the last will and testament of Mary Etta Buntin, should be removed.''

The contention of defendants that under the will of John H. Meriwether, Sr., they were appointed trustees of and are entitled to administer the remainder interest in lands devised to John H. Buntin, amounts to a claim that although a fee simple interest in remainder is devised to John H. Buntin, same is cut down by Articles XIII and XIX of the will. Article XIII of the will has been quoted above, and Article XIX appoints as trustees W. P. Meriwether, Hewitt P. Meriwether and Mary Etta Buntin, and directs that they take possession of all trust property immediately. We agree with the learned Chancellor that defendants' contention cannot be sustained.

As set out in Volume I of Phillips' Pritchard Law of Wills at page 354, section 390, the rule applicable is stated as follows:

"An express and unequivocal disposition of property in one clause of a will cannot be controlled by any inference from the context of any probable oversight or mistake of the testator in that disposition: where the court can merely infer or conjecture what the intention is, and no words are used to effectuate such intention, they cannot be supplied."

Also on the same subject, Page on Wills, Volume IV, section 310, page 83, says:

"If an interest has been given in clear and unmistakable language, it can be cut down only by language equally clear."

The will of John H. Meriwether, Sr., in Article VI of same, devises unequivocally and without qualification a fee simple remainder in and to three tracts of land therein devised for life to his mother, Mary Etta Buntin. Article XIII of the same will, in general language, gives direction and authority to the executors and trustees of said will with reference to administering the will and the devises therein made. In order to put the remainder interest of John H. Buntin under and within the provisions of the trust created by Article IV of said will, the language would have had to be clear and unequivocal. In our opinion, such is not the case and we think the Chancellor correctly rules that the remainder interest in the three tracts of land devised by Article VI to Mary Etta Buntin for life, with remainder in fee simple to John H. Buntin, was clear and unambiguous. Conse-

quently, such remainder interest passes without restriction to John Henry Buntin.

Defendants cite and rely on the case of Union & Planters Bank & Trust Co. v. Alsobrook, 6 Tenn.App. 264, as authority for holding that a trust should be established, but we do not consider that case applicable to the facts of the instant case.

■ With reference to exclusion of testimony complained of by defendants' Assignments of Error IV to IX, inclusive, since we agree with the Chancellor that the will of John H. Meriwether, Sr., is clear and contains no ambiguities, either latent or patent, we think it follows that the admission of the testimony excluded would not and could not have changed the result reached. In any event, even if some or all of such testimony should have been admitted and considered by the Chancellor, we think the exclusion of some would constitute harmless error under the provisions of section 27-117 T.C.A.

All of the assignments of error filed by defendants in this Court, will, therefore, be overruled.

We take up next the assignments of error filed by complainant, and will dispose of them in reverse order.

■ By his second assignment of error, complainant complains because the Chancellor did not remove Hewitt P. Meriwether as trustee under the will of Mary Etta Buntin; that in order properly to discharge his duty, a trustee should be on friendly terms with the beneficiary; and that such relationship does not exist between complainant and defendant, Hewitt P. Meriwether. He also contends that Hewitt P. Meriwether's interests are adverse to those of complainant because Hewitt P. Meriwether is one of the residuary legatees of the will of Mary

Etta Buntin, and that by withholding funds from complainant, Hewitt P. Meriwether can increase the amount which he will ultimately receive. In support of this assignment of error, complainant cites Maydwell v. Maydwell, 135 Tenn. 1. In that case, the Supreme Court reversed the Chancery Court of Shelby County and removed as trustee a mother who was trustee for her daughter, on the ground that the relationship between the parties was such that it would have been inadvisable and prejudicial to the best interests of both and of the estate for Mrs. Maydwell to be continued as trustee. In that case both the mother and daughter were each entirely capable of looking after her own interest. In the instant case, however, complainant is not capable of handling or looking after his own affairs and a conservator has been appointed for him. Complainant's real complaint seems to be that his mother, out of a very large estate, provided for him inadequately, leaving only a net income of $200.00 per month, plus such amounts as the trustee in his discretion might see fit to provide. No illness or other occasion for increasing his allowance has occurred, and no instance of discrimination or unfairness on the part of the defendant Hewitt P. Meriwether as trustee was proved. Furthermore, now that a conservator has been appointed for complainant, there is no reason to anticipate that the conservator cannot deal amicably with Hewitt P. Meriwether as trustee for John H. Buntin. Certainly the evidence in the record does not preponderate against the decision of the Chancellor on this aspect of the case. We therefore overrule complainant's assignment of error No. II, but without prejudice to have the issue reopened if and when future events may justify such reopening.

█ Complainant's first assignment of error that "The Chancellor erred in not awarding John Henry Buntin the certificate of deposit" for $21,513.01 must, however, in our opinion, be sustained. The certificate in question was made payable to the order of "Mrs. Howell Buntin or John Henry Buntin" and we think the evidence shows that it was the intention of Mrs. Mary Etta Buntin to have the proceeds of same go to the survivor. This is established by circumstances, and also by direct proof on the subject. The proof shows that there were two certificates, one for $10,000 payable to the order of Mrs. Howell Buntin, and the other for $21,513.01 payable to the order of Mrs. Howell Buntin or John H. Buntin. In addition, the proof shows that the amount represented by the $21,513.01 certificate came from the estate of complainant's father, and that Mrs. Mary Etta Buntin desired that John H. Buntin should ultimately receive the income from same. In addition, the proof shows that Mary Etta Buntin was quite insistent that her nephew Murry Buntin be present when her lock box was opened, and the testimony of Murry Buntin indicates that she desired his presence at the opening of her lock box so that the interests of John H. Buntin would be protected. From the testimony of Murry Buntin, we quote as follows:

"Q 59. What do you know about this certificate of deposit that is involved in this law suit, what is your information as to that?

A. I could go back and say that when Aunt Girlie was in the hospital, or when Mary Etta Buntin was in the hospital, she kept insisting that I be present when her lock box was opened after her death, and in the conversation why generally I tried to get around talking about death and what would happen afterwards around

her, because I tried to cheer her up and get her mind on other things where she would be more at ease, but she kept coming back to this, that she wanted me and Lamar Hicks present at her death and at the opening of her lock box, and so finally I said, 'Well, Aunt Girlie, if you want that, why, you put it in writing, then we'd have something to show', and so she did, and she wrote it out in longhand and signed it and one of the nurses, I've forgotten which one, Mrs. Henley or the other lady, witnessed the signature and she gave it to me; I asked her at the time why she wanted me there, I said, 'You must have something in there for me', and she said, 'No.', but said, 'I've got something for John Henry, and I want you to be there.'

Q 60. Did you know what she had in mind?

A. At that time, no, sir.

Q 61. Did you later on—

A. Later on why I did know, but it came about this way; the year before she had signed a note at the Bank of Commerce for, I believe it was $300.00 to operate this tenant's supplies that I was looking after for her; in the fall when the crop was gathered why we sold the cotton and paid the note off and it was stamped paid and brought to her and the other proceeds were divided to John Henry, John Henry was with me and he got the other part, of course the tenant got his part that was left; well, in January, say this was in November, in January why she got a notice from the bank, she didn't even open it, but she called me to come up there so I came the next morning, and she said, 'I've got this notice from the bank and I thought you had paid that note,' and I said, 'Well, I did, and you have it out there

in your files marked "paid" ', and so she said, 'Well, look here, what is this?' So I opened the notice and it was from the Second National Bank where the note had been from the Bank of Commerce, and as soon as I opened it it stated that on a certain date, I believe it was the 5th of February, the best I remember, these time certificates would mature and would have to be cashed and re-invested or some action be taken because interest would stop on that date and would not be paid from then on under the present circumstances; so I explained to her what it was and it showed how they were made, and to whom and all of that.

Q 62. How were they made payable?

A. One was made to Mary Etta Buntin and one to Mary Etta Buntin or John Henry Buntin.

Q 63. What was the amounts of them, do you recall?

A. One was $10,000.00—

Q 64. Now, who was that payable to?

A. Mary Etta Buntin.

Q 65. All right?

A. One was $21,500 (Twenty One Thousand Five Hundred) and somthing dollars, I believe, I don't remember the exact amount, and it was made to Mary Etta Buntin or John Henry Buntin; and she had given the lock box key to John Henry to keep when she went to the hospital the last time, along with some other papers and business things that she had, so, I knew the conditions of the will, she wanted me to go right on up there at the time, said that Hewitt was busy working and she wanted to cash them and re-invest

them just like they were, and so, I told her that I would do it if Hewitt couldn't and that I'd see that it was done and taken care of, but that she would have to write a letter authorizing us to enter—authorizing me to enter her lock box, and so, at this time, maybe that night or the next morning, I called Hewitt and told him that I didn't want to go in the lock box by myself or with John Henry, that I'd prefer that he went or if he wanted me to go with him to fulfill her wishes why I'd be glad to do that; he said, no, he'd take care of it, and so I stepped back and it was taken care of by him, but John Henry met him at the bank with the key and they went in together; that's about all I remember about or know about the time certificates.

Q 66. Do you have any knowledge of where the money came from for investing in the two certificates of deposit?

A. Yes, sir.

Q 67. Where did it come from—the money?

A. $21,000.00 was a part of the money that was left— I have seen a check, I can't find it now, where shortly before my uncle's death $25,000.00 was removed from his bank account in the Second National Bank, the check was written to Mary Etta Buntin and signed by Howell Buntin, and it was transferred to the National Bank of Commerce; for several years this money stayed up there and Aunt Girlie always considered it hers and John Henry's, well, she considered it John Henry's for that matter, because she wouldn't spend a dime of it; she did later on take some out for another reason; later on—she always had her insurance up there with Pope-Russell and Company and they'd had

it there for twenty-five or thirty years, and an inspector came out and was checking on some of the tenant houses and happened to see one that had been—the renter, the person renting had moved out and torn it up, and we didn't even know it at the time, I mean we didn't know he was out there, she didn't or I didn't either, and they had jerked out the light fixtures, kicked out the windows, just generally torn the house up, and so the insurance investigator came back and demanded that they cancel all the insurance on that farm; and so she got mad about it, at least she didn't like it, so afterwards why she transferred her money from there back to the Second National Bank, her savings account, she did keep a small checking account; but, this money has been kept together, it was kept down there on savings and later when the time certificate plan came out or was authorized, she invested this in time certificates because it would draw more interest. The other one I think, the $10,000.00 made in her name was money that came to her from her father's estate and from the sale of timber and things on some of the property, money that came to her from a different source.

Q 68. Now, John Henry Buntin's father's name was —what was John Henry Buntin's father's name?

A. Howell Buntin.''

In Sloan v. Jones, 192 Tenn. 400, 241 S.W.2d 506, 25 A.L.R.2d 1235, the Supreme Court held in a contest between the heirs of a husband and the heirs of a wife who had predeceased the husband that the heirs of the husband were entitled to a joint bank account standing in the name of ''Joe Tatum or wife''. The lower court had held in favor of the heirs of the wife, but the Supreme Court, relying primarily on the affidavit of the president

of the bank in which the deposit was made, that Tatum and wife intended that the survivor should take all of the deposit, reversed the lower court and held in favor of the heirs of the husband, on the ground that the bank account in question was a tenancy by the entireties, to which the survivor was entitled.

In the case of Peoples Bank v. Baxter, 41 Tenn.App. 710, 298 S.W.2d 732, this Court held that Mrs. W. A. Nippers, a daughter of Mrs. H. B. Baxter, was entitled to the proceeds of a time deposit certificate of Mrs. H. B. Baxter for $2,000, "Payable to the order of herself or payable on her death to Mrs. W. A. Nippers." In that case, the decision was based on the theory that Mrs. Nippers was a third person beneficiary of a contract between Mrs. Baxter and the bank.

In the case of Melhorn v. Melhorn, 208 Tenn. 678, 348 S.W.2d 319, our Supreme Court held, citing with approval both Sloan v. Jones and Peoples Bank v. Baxter, that the executrix of the estate of John Melhorn was not entitled to recover from Lee Melhorn the proceeds of a joint bank account in the name of "John or Lee Melhorn", the proof showing that John and Lee Melhorn intended that the survivor should take the proceeds of said account. The signature card delivered to the bank at the time the account was opened, evidenced such an intention on the part of the depositors. From the Supreme Court's opinion written by Mr. Justice Felts, we quote as follows:

"The Chancellor and the Court of Appeals concurred in finding that the joint survivorship account in the Harriman Bank, in the names of 'John or Lee Melhorn,' was opened with the intention on the part of John Melhorn to create a joint tenancy, or joint owner-

ship, in the fund with the right in the survivor to take it.

Such an intention was established by the testimony of the officers of the bank, and by the joint signature card signed by John Melhorn and Lee Melhorn, containing the agreement between themselves and the bank that the money on deposit in this account '*shall be owned by them jointly,* WITH RIGHT OF SURVIVORSHIP', and be subject to the check of either of them or of the survivor.

While our statute abolished common law joint tenancy, it did not affect or limit the right of persons by will, deed, or contract, to create an estate of survivorship. McLeroy v. McLeroy, 163 Tenn. 124, 40 S.W.2d 1027; Howell v. Davis, 196 Tenn. 334-339, 268 S.W.2d 85.''

Melhorn v. Melhorn, 208 Tenn. 684, 348 S.W.2d 321-322.

In the instant case, we do not have, as in the case of Melhorn v. Melhorn, proof of actual contract between Mary Etta Buntin, John Henry Buntin and the Second National Bank, that the certificate of deposit in controversy should go to the survivor; but we have proof that Mrs. Mary Etta Buntin intended that John Henry Buntin as a survivor should get the proceeds of said certificate of deposit, from which proof we may properly infer that there was a contract to that effect between Mrs. Mary Etta Buntin and John Henry Buntin. In any event, the proof is clear that such was the intention of Mary Etta Buntin when the money was deposited on time deposit certificate, and we think that such intention should prevail. In addition, it appears from the testimony

of Murry Buntin that the estate of Howell Buntin was administered as an intestate estate and that none of that estate was paid over to John Henry Buntin, the son of Howell Buntin; so, equitably, complainant was entitled to half of the personal property of his father.

Our conclusion is that complainant's Assignment of Error I should be sustained, and that John Henry Buntin should be adjudged entitled to the certificate of deposit of $21,513.01, a decree for which amount against Hewitt P. Meriwether as trustee under the will of Mary Etta Buntin may be entered in this Court.

All other assignments of error, both complainant's and defendants', will be overruled, and, with the modification indicated, the decree of the Chancery Court of Madison County will be affirmed. The cause will be remanded to the Chancery Court of Madison County for enforcement of the decree herein rendered and for any other proceedings therein not inconsistent with this opinion.

The costs of the cause, including the costs of the lower court as well as the costs of the appeal, will be divided equally between the estate of John H. Meriwether and the estate of Mary Etta Buntin.

Avery, P.J.(W.S.) and Carney, J., concur.