Thomas R. **POUNDS**, Plaintiff-Appellee,

v.

Roxie **LASATER**

and

Theola Osteen, D.C. Cribbs, Sr., Bud H. Cribbs, and John H. Pope, Defendants-Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

Aug. 5, 1986.

Permission to Appeal Denied by Supreme Court Nov. 24, 1986.

Conley, Campbell, Moss & Smith, Union City, for plaintiff-appellee.

Charles H. McWherter of Martin Brundige, Maloan, Gallien & Moore, P.C. Martin, for defendants-appellants.

CRAWFORD, Judge.

Plaintiff, Thomas R. Pounds, sued Roxie Lasater, Executrix of the Estate of William J. Pounds, to recover the proceeds of a certificate of deposit. Several estate beneficiaries were allowed to intervene as parties defendant, but their position in this controversy is identical to Lasater's so we will not refer to them separately. The trial court sitting without a jury held that plaintiff was entitled to the proceeds and defendant has appealed.

Thomas R. Pounds and the deceased, William J. Pounds, were brothers, both over 80 years of age in August, 1982. On August 23, 1982, William J. Pounds purchased a certificate of deposit from First American National Bank in Milan, Tennessee, made payable to "Himself or Thomas R. Pounds." The certificate of deposit was renewed in the same names twice and additional funds were added thereto at the time of the second renewal on August 22, 1983. When the certificate was renewed in February, 1984, just prior to William J. Pounds' death, the name of Thomas R. Pounds was removed therefrom at the request of William J. Pounds. Upon William J. Pounds' death in March, 1984, the defendant Executrix took charge of the assets, including the certificate of deposit last issued in the name of William J. Pounds only.

It has been determined that in February, 1984, when William J. Pounds requested that Thomas R. Pounds' name be removed from the renewal certificate of deposit, William J. Pounds was mentally incompetent, and the parties hereto have stipulated that the removal of Thomas R. Pounds' name from the certificate of deposit was improper and without legal effect. Therefore, the issue in the trial court was whether Thomas R. Pounds had a right of survivorship in the certificate of deposit issued on August 23, 1982, and subsequently renewed in the joint names.

In *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683 (Tenn.App.1982), the Eastern Section of this Court stated:

In this jurisdiction, the contract approach to questions of joint ownership has supplanted the common law approach of joint tenancy with its requirement of four unities. *See Lowry v. Lowry*, 541 S.W.2d 128 (Tenn.1976); *Jones et al. v. Jones et al.*, 185 Tenn. 586, 206 S.W.2d 801 (1947). Under the contract theory, the formal requirements of an *inter vivos* gift are likewise irrelevant, 541 S.W.2d at 130, and the issue is whether the parties intended to create a right of survivorship. *Simmons v. Foster*, 622 S.W.2d 838 (Tenn.App.1981). This intent may be shown by signed bank signature cards which express the contractual right of survivorship. *Melhorn v. Melhorn*, 208 Tenn. 678, 348 S.W.2d 319 (1961); *Iacometti v. Frassinelli*, 494 S.W.2d 496 (Tenn.App.1973). Tennessee courts have recognized that intent as to type of ownership may be established by extrinsic evidence. *Griffin v. Prince*, 632 S.W.2d 532 (Tenn.1982); *Simmons v. Foster, supra; Buntin v. Meriwether*, 56 Tenn. App. 492, 408 S.W.2d 667 (1966). In *Buntin*, the oral testimony of a nephew was allowed to establish the intent of the depositor at the time the deposits were made. The court, in *Simmons*, required a showing of intent either in the expressed words of the parties or "by necessary implication." p. 841....

*Id.* at 689–90.

Defendant Executrix seems to argue that in order for there to be a right of survivorship an express contract between the deceased and the banking institution must be established. We disagree with defendant's interpretation of the law. In *Gay v. Phillips*, 667 S.W.2d 495 (Tenn.App.

1983), the Court held that the purchaser's intent at thé time of purchasing the certificate of deposit would determine who should receive the proceeds. This simply means that when a certificate of deposit is issued, by the terms of which the survivor could take the proceeds, adequate proof of the purchaser's intent to allow the survivor to so take is sufficient to establish the contract necessary for a right of survivorship. Absent any express direction from the purchaser of the certificate, the bank's assumption that the purchaser desires a right of survivorship and the bank's issuance of the certificate in a form allowing survivorship, coupled with proof that this was the purchaser's intent at the time of the purchase, is sufficient to satisfy the contractual requirements.

In view of the applicable law, we perceive the only real issue involved in this appeal to be whether the evidence preponderates against the trial court's finding that William J. Pounds intended for Thomas R. Pounds to take the proceeds of the certificate of deposit by right of survivorship.

From the evidence and stipulations, the Chancellor made the following findings of fact:

1. That on or about August 23, 1982, William J. Pounds, now deceased, accompanied by his brother, Thomas R. Pounds and Thomas' wife, Jeannie Ruth Pounds, went to First American Bank in Milan, Tennessee, where William J. Pounds deposited $30,000.00 in an interest-bearing certificate of deposit. That the bank official who handled this transaction was Mrs. Sara McLean Williams, vice-president, who testified that she was instructed by William J. Pounds to issue the certificate in his name and the name of his brother, Thomas R. Pounds, and that she caused one of the clerks in the bank to issue the certificate made payable to "William J. Pounds or Thomas R. Pounds."

2. The bank official testified that she assumed that William J. Pounds intended to create a right of survivorship in the certificate and that at the time this certificate was purchased the bank issued all certificates where right-of-survivorship was intended using identical wording and that the instruments contained no other words or phrases indicating "right-of-survivorship" or "pay on death." The bank vice-president further testified that had either Mr. William J. Pounds or Thomas R. Pounds presented the instrument for redemption that the bank would have honored same and paid the proceeds over.

3. The original certificate was renewed on February 20, 1983, and again on August 22, 1983, at which time an additional sum of $10,609.11 was added by William J. Pounds, for a total of $40,609.11. This certificate was issued payable to "William J. Pounds or Thomas R. Pounds."

4. That on or about September 12, 1983, William J. Pounds executed a will wherein he devised $1000.00 to his brother, Thomas R. Pounds, and the rest and remainder equally to three living sisters.

5. That William J. Pounds had lived with his brother after he returned to Tennessee from California in October of 1981, for about one and a half years and until about July of 1983, when he moved to the home of his sister, Roxie Lasater, and that he was living with Roxie Lasater when the certificate was renewed on August 22, 1983.

6. That some period after August 22, 1983, William J. Pounds decided that he no longer wanted Thomas R. Pounds to be named as one of the payees on the certificate of deposit and, accompanied by his sister, defendant Roxie Lasater, went to First American Bank to accomplish this. He was advised by the bank that the certificate could not be redeemed and re-issued prior to the maturity date without involing [sic] a penalty. William J. Pounds declined to pay the penalty and decided to wait until the certificate matured, which would be on February 20, 1984.

7. That in 1983, William J. Pounds became ill and was in the hospital on two or

more occasions, and that on February 11, 1984, he suffered a stroke, or something similar, and became mentally and physically unable to manage his person and affairs. (Affidavits of Dr. Robert Beales and Dr. James W. Shore) That on March 1, 1984, Roxie Lasater filed a petition in the Chancery Court of Weakley County for the appointment of a conservator for her brother, William J. Pounds, and in which sworn petition she alleged that the said William J. Pounds was mentally and physically unable to manage his estate.

8. That William J. Pounds died on March ——, 1984.

9. That the certificate of deposit purchased August 22, 1983, "payable to himself or to Thomas R. Pounds," matured on February 20, 1984. That on February 21, 1984, after William J. Pounds became physically and mentally disabled, his sister, Roxie Lasater, went to First American Bank with a note or writing, not in the handwriting of William J. Pounds, but signed by him after he became physically and mentally incompetent, and caused the bank to re-issue or renew the certificate for a new term of 182 days and payable only to "William J. Pounds." The Court therefore finds that the bank renewed the certificate without proper authority and improperly removed the name of Thomas R. Pounds as a named payee on said renewal certificate.

10. The Court finds from the conduct of William J. Pounds that at the time of the original purchase of the certificate and up to and including the last valid renewal on August 22, 1983, the said William J. Pounds considered the certificate to be payable on death to his brother, Thomas R. Pounds, and that he never validly rescinded this contract, although he went to the bank with his sister, Roxie Lasater, and stated to the vice-president of First American Bank that he wanted to remove his brother's name from the certificate of deposit, but declined to do so on learning it would cost him a penalty. The contract was still in full force and effect on February 11, 1984, when William J. Pounds became mentally disabled.

In addition to the facts found by the Chancellor we note from a review of the record that the deceased, William J. Pounds, purchased another certificate of deposit subsequent to the certificate in question and this certificate was purchased in his name individually. In addition, he continued to maintain bank accounts in his name individually, so there is nothing in the record to indicate that Thomas R. Pounds' name was placed on the certificate as a convenience. It certainly appears from the deceased's disposition of his estate that he took into consideration Thomas R. Pounds' ownership of the certificate. Furthermore, the Executrix testified that William J. Pounds thought that Thomas R. Pounds would acquire at least part of the certificate by right of survivorship.

The testimony at trial indicated some dispute as to statements made by interested parties. The trial court was able to observe the manner and demeanor of the witnesses as they testified and gave such weight, faith and credit to the testimony as the testimony deserved. Any conflict in testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight by the appellate court, unless other real evidence compels a contrary conclusion. *State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968); *Linder v. Little*, 490 S.W.2d 717, 723 (Tenn.App. 1972).

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

From our review of the record, we cannot say that the evidence preponderates against the Chancellor's finding that the deceased William J. Pounds intended for Thomas R. Pounds to take the certificate of deposit by right of survivorship, and the

terms of the certificate allow payment to Thomas R. Pounds. Therefore, the trial court's judgment is affirmed and costs are assessed against the appellants. This case is remanded for such further proceedings as are necessary.

FARMER, J., and STRAUCH, Special Judge, concur.