In re the **ESTATE OF James D. BOWLIN, Deceased, Petitioner–Appellant,**

v.

**Georgia ABLES, Respondent–Appellee.**

Court of Appeals of Tennessee,
Western Section,
at Jackson.

Sept. 29, 1988.

Application for Permission to Appeal
Denied by Supreme Court
Dec. 5, 1988.

Conley, Campbell, Moss and Smith, Union City, for petitioner-appellant.

Harry Max Speight, Dresden, for respondent-appellee.

CRAWFORD, Judge.

This case involves the ownership of a certificate of deposit and a mobile home. Bobby Bowlin was appointed administrator of the estate of James D. Bowlin, deceased, in September, 1986. He shortly thereafter filed a petition against respondent, Georgia Ables, which seeks a determination as to the ownership of a certificate of deposit issued in the name of James Bowlin or Georgia Ables and the ownership of a mobile home titled in the name of Elmo and Georgia Ables. From the judgment of the trial court holding that Georgia Ables is the owner of the certificate of deposit and the mobile home, the administrator has appealed.

The first issue presented for review is whether the trial court erred in holding that Georgia Ables is the owner of the certificate of deposit.

█ The facts are virtually undisputed. The deceased was 66 years of age at the time of his death and had retired from his janitorial job at Goodyear Tire & Rubber Company. The deceased was an alcoholic and had a diminished mental capacity described as that of a 13 or 14 year old. He had never married, had lived with his parents until their deaths and all of his business and financial affairs had been handled and managed by his mother until her death in 1971. After his mother's death in 1971, none of the deceased's other brothers and sisters were interested in taking care of him, but his sister, Georgia Ables, the respondent, agreed to do so. The deceased purchased a trailer which was placed in the trailer park owned by Mrs. Ables and her husband, and from 1971 until the deceased's death in 1986, Georgia Ables handled all of his business and financial affairs.

The deceased would cash his paycheck from Goodyear and after retaining an amount he wanted for incidental expenses, he would turn the balance over to Mrs. Ables. This money was placed in a checking account which she opened at City State Bank in the deceased's individual name. Mrs. Ables was the only authorized signatory on this account. Subsequently, the account was changed to an interest bearing checking account in the same name. In 1979, Mrs. Ables took money from this account and opened a Golden Passbook Savings Account in the names of James Bowlin or Georgia Ables. She handled the transaction for the opening of this account and there was no signature card or written contract concerning this account. In April of 1984, the certificate of deposit in the name of James Bowlin or Georgia Ables was purchased with funds from this account. Again, Mrs. Ables handled this transaction and there was no written signature card or contract concerning the purchase of this certificate of deposit. This certificate of deposit was renewed periodically by endorsement in the name of James Bowlin by Georgia Ables. The deceased never at any time had any contact with the bank concerning his bank account and the certificate of deposit. Mrs. Ables and several disinterested witnesses testified without contradiction that the deceased had stated on different occasions that everything that he had was to go to his sister, Georgia Ables, upon his death.

Mrs. Ables contends that the testimony established that the deceased intended for her to have all of his property and that the certificate of deposit passed to her by right of survivorship.

She relies upon *Gay v. Phillips,* 667 S.W. 2d 495 (Tenn.App.1983) and *Pounds v. Lasater,* 722 S.W.2d 664 (Tenn.App.1986). In *Gay,* a CD was purchased by the deceased made payable to him or to his niece. In *Pounds,* a CD was purchased by the deceased and made payable to him or to his brother. In both cases, *the deceased handled the transaction with the bank* whereby the account or certificates of deposits were established.

In *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683 (Tenn.App.1982), Judge Franks, speaking for the Eastern Section of this Court, stated:

In this jurisdiction, the contract approach to questions of joint ownership has supplanted the common law approach of joint tenancy with its requirement of four unities. *See Lowry v. Lowry*, 541 S.W.2d 128 (Tenn.1976); *Jones et al v. Jones et al*, 185 Tenn. 586, 206 S.W.2d 801 (1947). Under the contract theory, the formal requirements of an *inter vivos* gift are likewise irrelevant, 541 S.W.2d at 130, and the issue is whether the parties intended to create a right of survivorship. *Simmons v. Foster*, 622 S.W.2d 838 (Tenn.App.1981). This intent may be shown by signed bank signature cards which express the contractual right of survivorship. *Melhorn v. Melhorn*, 208 Tenn. 678, 348 S.W.2d 319 (1961); *Iacometti v. Frassinelli*, 494 S.W.2d 496 (Tenn.App.1973). Tennessee courts have recognized that intent as to type of ownership may be established by extrinsic evidence. *Griffin v. Prince*, 632 S.W.2d 532 (Tenn.1982); *Simmons v. Foster, supra; Buntin v. Meriwether*, 56 Tenn.App. 492, 408 S.W.2d 667 (1966). In *Buntin*, the oral testimony of a nephew was allowed to establish the intent of the depositor at the time the deposits were made. The court, in *Simmons*, required a showing of intent either in the expressed words of the parties or "by necessary implication."

*Id.* at 689–90.

In our opinion this case is controlled by *Chambers v. Henry*, 628 S.W.2d 740 (Tenn. App.1982), where the court noted that the contract theory under which the funds in joint bank accounts passed to the survivor is basically a theory of third party donee beneficiary. In *Chambers*, the deceased, Mrs. Holmes, turned over certain funds to Donald Henry and Henry purchased the certificate of deposit in the name of Mary Holmes or Donald Henry. The proof established that Henry handled all of the negotiations and Mrs. Holmes had nothing to do with the transactions with the bank. The court said in holding that the certificate of deposit did not pass to Henry by virtue of survivorship:

The flaw in defendant's reliance upon *Baxter, supra, Melhorn, supra,* and *Buntin, supra,* is that the defendant cannot be the beneficiary of a contract between Mrs. Holmes and the bank because Mrs. Holmes had no dealings with the bank. Mrs. Holmes did not purchase the certificate of deposit intending that the bank pay the money to Mr. Henry upon her death. Neither did she instruct Mr. Henry to deposit the money anywhere in any manner. She simply entrusted him with the funds for a specific purpose. Mr. Henry, with all good intentions, purchased the certificate in both their names, but the intention was his; not Mrs. Holmes'. By doing so, he did not correct what may have been Mrs. Holmes' error in not executing a will or a contract with a bank to provide that the money should go to Mr. Henry upon her death. When Mrs. Holmes died, Mr. Henry's position was no different than if the money was still in his lock box. Although Mrs. Holmes may have intended that Mr. Henry have the remainder of the money upon her death, she failed to make a legally effective testamentary disposition. See T.C.A. §§ 32–101 through—108. [now T.C.A. 32–1–101 to –112 (1984)].

*Id.* at 742.

Paraphrasing the Court's statement in *Chambers*, although James Bowlin may have intended that Mrs. Ables have the certificate of deposit upon his death, he failed to make a legally effective testamentary disposition. Clearly, he did not make a contract with the bank.

Accordingly, we hold that the certificate of deposit was properly an asset of the estate.

The second issue is whether the trial court erred in holding that Mrs. Ables owns the mobile home.

 Here again, the facts are virtually undisputed. In 1971, the deceased with his own funds purchased a mobile home to be placed in the trailer park owned by Mrs.

Ables and her husband. The money was given to Mrs. Ables to handle the transaction, and she purchased the used mobile home from a firm in Paris, Tennessee. The title certificate was made out to Mrs. Ables and her husband. Mrs. Ables asserts that the deceased's declared intent that she have everything upon his death establishes that she is the owner of the mobile home. We disagree. Here again, it is clear that the deceased failed to make a proper testamentary disposition of the mobile home. *See* T.C.A. § 32-1-101 to -112 (1984). Therefore, there must be a determination whether the deceased made a gift of the mobile home to Mrs. Ables. From our review of the evidence we cannot find that a gift was made. In order to constitute a completed and irrevocable gift *inter vivos* there must be (1) an intention on the part of the donor to make the gift and (2) the intention must be accompanied by delivery of the property. *Arnoult v. Griffin*, 490 S.W.2d 701 (Tenn.App.1972). The proof in this case is that possession of the mobile home was retained by the deceased.

Furthermore, the proof establishes that Mrs. Ables never considered that she had been given the mobile home. We quote from the record:

Q. Did you consider it as you all's trailer since it was titled in your name?

A. I didn't really consider it my trailer, but he was living in my trailer rent free, so—I mean, we didn't make any papers or nothing....

\* \* \* \* \* \*

Q. But you don't know why the title was put in your—

A. I don't know why it was put in my name. The only thing was, the money was borrowed from my sister. And the only reason that I can think that we put it in our name, it was being put on our property. And if something were to happen, like at the time, I didn't think my brother would ever get it paid for, was what I was thinking. And I knew then that I would probably end up paying for it. I don't know why it was put in my name. I'm honest. I don't know.

Q. This would have been for convenience purposes just like handling his affairs? Is that the reason?

A. I really don't know.

Q. You didn't claim it was your trailer? Is that correct?

A. No. No.

Q. He bought a trailer and started living in it? Is that correct?

A. Yes.

It appears from other parts of the transcript that Mrs. Ables' real claim to the trailer results from her feeling that she and her husband incurred expenses in maintaining the trailer for a few years. This may very well be, but Mrs. Ables' recourse in that event would be to file a claim against the estate.

Accordingly, we hold that the mobile home or trailer is an asset of the estate.

Therefore, the judgment of the trial court is reversed and judgment will be entered in this Court declaring the estate to be the owner of the certificate of deposit and the mobile home. This case is remanded to the trial court for such further proceedings as may be necessary. Costs of the appeal are assessed against the appellee.

FRANKS and GODDARD, JJ., concur.