
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 19, 2017 Session

## IN RE ESTATE OF EARSIE L. KIRKMAN



**Appeal from the Chancery Court for Hardin County**
**No. P7-352   James F. Butler, Chancellor**

_____

**No. W2016-00759-COA-R3-CV**

_____

This case involves the disposition of several certificates of deposit that were held in joint tenancy, with right of survivorship, by Decedent and her daughter, Appellee. Appellants, beneficiaries of Decedent's estate, argued that the certificates of deposit were probate assets. The trial court denied the objection and closed the estate, finding that the certificates of deposit passed to Appellee as the surviving joint tenant. Appellants appeal. Affirmed and remanded.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J, W.S., and BRANDON O. GIBSON, J., joined.

Terry Abernathy, Selmer, Tennessee, for the appellants, Gary Henley, Angelia Durbin, Jerry Henley, and Wayne Henley.

C. Mark Donahoe, Jackson, Tennessee, for the appellee, Bobbie Hardin.

## OPINION

### I. Background

Earsie L. Kirkman ("Decedent") died testate on July 1, 2008. She was survived by her children and grandchildren: Claudette Henley,[1] Angelia Durbin, Jerry Henley, Gary Henley (together, "Appellants"); and Bobbie Hardin ("Appellee"). Decedent's will

---

[1] Claudette Henley died on January 17, 2012; on March 2, 2012, the trial court ordered the substitution of Claudette Henley's son, Wayne Henley.

devised her estate, in equal share, to her children or their survivors. Decedent's daughter, Bobbie Hardin, was designated as the executrix of the estate.

At issue in this appeal is the proper disposition of three certificates of deposit ("CDs")—two held at Hardin County Bank and one held at Farmers and Merchants Bank. The CDs were owned by "Earsie Kirkman or Bobbie Hardin," with boxes checked on the signature card to indicate that the CDs were held in joint tenancy with right of survivorship. Decedent opened the original CDs decades before her death, without Appellee's assistance or knowledge. At the time of Decedent's death, the original CDs had matured several times, and Appellee had renewed the CDs, in joint tenancy with Decedent, after each maturation period.

On September 9, 2008, Appellee filed a petition to probate Decedent's will in the Chancery Court of Hardin County ("trial court"). On the same day, the trial court admitted the will to probate. On January 20, 2009, Appellants filed a claim against the estate, contending that the disputed CDs should be included in Decedent's residual estate. On February 13, 2009, Appellee filed an exception to Appellants' claim against the estate, stating that the CDs were nonprobate assets because they were held in joint tenancy with right of survivorship by Decedent and Appellee; accordingly, Appellee argued that the CDs passed to her on Decedent's death. Appellants voluntarily withdrew their claim against the estate on May 4, 2009.

On November 19, 2010, Appellee filed a motion to distribute funds and close the estate. On November 24, 2010, Appellants filed an objection to the motion, arguing that the CDs should be included in the probate estate. The trial court ordered Appellee to produce copies of the CDs and set the matter for hearing on March 9, 2012. However, no proof was taken on March 9, 2012. On March 13, 2013, Chancellor Harmon of Hardin County recused himself, and the parties agreed that Chancellor Butler would hear the case by interchange.

On May 5, 2013, the trial court heard the case. The trial court ordered the estate closed on May 22, 2013, finding that

> [t]he crux of the objection to closing the estate centers around three Certificates of Deposit[,] which were in existence on the date of the death of Mrs. Kirkman, July 1, 2008…. All three showed the owners as Earsie Kirkman or Bobbie Hardin. It is undisputed that the funds represented by the CDs emanated from Mrs. Kirkman. Mrs. Hardin is Mrs. Kirkman's daughter. It is undisputed Mrs. Kirkman did not sign the documents creating the CDs. Whenever the CDs were renewed, Mrs. Hardin handled it. Each time it was renewed, it was set up in exactly the same way as before on the same terms and with the same owners. The only testimony presented concerning the CDs, besides the documents themselves, was

from Mrs. Hardin, the co-owner of the CDs. She testified she always followed her mother's instructions as to how to renew the Certificates of Deposit. She testified her mother had always created CDs with Mrs. Hardin's name on them. She further testified that before her death, Mrs. Kirkman inquired of whether or not the CDs were in order and as a result, the Hardin County Bank and Farmers and Merchants Bank sent Mrs. Kirkman and Mrs. Hardin a letter to Mrs. Kirkman's address confirming that the Hardin County CDs at issue were joint with the right of survivorship. The letter was dated March 18, 2008. Mrs. Kirkman died July 1, 2008. Mrs. Hardin testified that she saw the letter and Mrs. Kirkman saw the letter. There is no evidence that Mrs. Kirkman attempted to make any change based on the contents of that letter which is Exhibit 15 to the hearing.

* * *

The Court finds that the evidence is clear and convincing that Mrs. Kirkman intended for the CDs to be joint tenants with right of survivorship with Bobbie Hardin. While Mrs. Hardin had no power of attorney, she testified she had permission from her mother to sign her mother's name to documents, including the CDs. But even in the absence of that, Mrs. Hardin being a co-owner, could have cashed in the CDs at any time, or renew the CDs when they were up for renewal, because they were in the name of Mrs. Kirkman or Mrs. Hardin.

* * *

The objection to the Motion to distribute funds and close the estate of Earsie Kirkman and to discharge the personal representative is denied.

The Motion to close the estate and distribute funds and discharge the personal representative is granted.

On June 14, 2013, Appellants filed a motion to alter or amend the order, arguing that the trial court improperly allowed Appellee to testify "concerning transactions with, or statements by" Decedent, in violation of Tennessee Code Annotated Section 24-1-203, also known as the Dead man's statute. On September 30, 2013, the trial court denied Appellants' motion, concluding that

[t]he previous ruling in this case arose out of a three hour hearing in the [trial court], wherein certain documents were introduced into evidence and the testimony of Bobbie Hardin was taken. There was no other evidence presented. The beneficiaries, the movants in this case, now contend that the

court should have excluded testimony of Ms. Hardin pursuant to Tennessee Code Annotated [Section] 24-1-203, also known as the dead man's statute. The testimony was objected to at the time of its presentation and the court overruled the objection.

The court has already spoken in its previous ruling to the importance of the intent of the parties in this case. The court also has noted the opportunity Ms. Kirkman had by virtue of the letter from the bank to make the changes if she wanted to. At least as to the two original Certificates of Deposit that were set up as joint CDs, Ms. Hardin had the right to renew those CDs in any fashion she desired since she was a co-owner. The fact is she renewed them as joint.

* * *

After review of the notes taken by the court at the hearing, review of the certificates of deposit introduced into evidence, the bank letter, the position of both parties in this case, arguments of counsel, and entire record of this cause, the court finds that the *Bradley* criteria have not been met by the movants and, the court finds that the Motion to Alter or Amend should be overruled.[2]

Appellants appeal.[3]

## II. Issues

Appellants raise four issues for review, as stated in their brief:

---

[2] In its order, the trial court also found that the Appellants' objection to the closing of the estate violated the one-year statute of limitations enumerated in Tennessee Code Annotated Section 30-2-310. Because Appellants were not claimants against the estate (having withdrawn their claim), Tennessee Code Annotated Section 30-2-310 is not applicable. Rather, Appellants are proceeding as beneficiaries of Decedent's estate.

[3] Appellants filed their first notice of appeal on October 24, 2013. On February 11, 2014, this Court entered an order, finding that it lacked subject matter jurisdiction to hear the case because the trial court had not entered a final order. *In re Estate of Earsie L. Kirkman*, No. W2013-02839-COA-R3-CV (Tenn. Ct. App. Feb. 11, 2014). On February 19, 2014, the trial court entered an order, stating that "in accordance with Rule 54.02 of the Tennessee Rules of Civil Procedure, the Court expressly determines that there is no just reason for delay, and does further expressly direct the entry of a Final Judgment as to the claims adjudicated." On March 17, 2014, this Court again dismissed the appeal because the trial court made no final ruling on the issue of attorney's fees; thus, the order appealed was not final. *In re Estate of Earsie L. Kirkman*, No. W2013-02839-COA-R3-CV, 2014 WL 1030528 (Tenn. Ct. App. Mar. 17, 2014). On March 17, 2016, the trial court granted the motion for approval of attorney's fees. Subsequently, on April 11, 2016, Appellants perfected their appeal to this Court.

1. Did the Trial Court err in determining that the account documents "utilized" by the involved Bank created a right of survivorship in favor of Bobbie Hardin, in the absence of the signature of Earsie L. Kirkman, the sole owner of the monies evidenced by the three (3) involved Certificates of Deposit?

2. Did the Trial Court err in permitting and allowing, over the objection of the Appellants/Beneficiaries, the testimony of Bobbie Hardin, Executrix of the Estate of Earsie L. Kirkman, deceased, concerning transactions with, or statements by, the deceased?

3. Did the Trial Court err in relying upon the objectionable testimony to rule in favor of the Appellee/Executrix?

4. Did the Trial Court err in denying the Appellants[']/Beneficiaries['] Post-Trial Motion to Alter or Amend [the] Order?

## III. Standard of Review

This case was tried without a jury. Therefore, we review the trial court's findings of fact *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). The trial court's conclusions of law, however, are reviewed *de novo* and "are accorded no presumption of correctness." ***Brunswick Acceptance Co., LLC v. MEJ, LLC***, 292 S.W.3d 638, 642 (Tenn. 2008). "Decisions regarding the admission or exclusion of evidence are entrusted to the trial court's discretion. Thus, reviewing courts will not disturb these decisions on appeal unless the trial court has abused its discretion." ***State v. Banks***, 271 S.W.3d 90, 116 (Tenn. 2008) (citing ***State v. Robinson***, 146 S.W.3d 469, 490 (Tenn. 2004); ***State v. James***, 81 S.W.3d 751, 760 (Tenn. 2002)). An abuse of discretion will be found only where the trial court "applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party." ***Id.*** (citing ***Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008)).

## IV. Analysis

The pivotal issue in this appeal is whether the CDs properly passed to Appellee on Mrs. Kirkman's death. Decedent's intent determines the disposition of the CDs. *See* ***Merchants & Planters Bank v. Myers***, 644 S.W.2d 683, 689 (Tenn. Ct. App. 1982) ("In this jurisdiction, the contract approach to questions of joint ownership has supplanted the common law approach of joint tenancy with its requirement of four unities. Under the contract theory, the formal requirements of an *inter vivos* gift are likewise irrelevant, and the issue is *whether the parties intended* to create a right of survivorship.") (internal

citations omitted) (emphases added). To establish a testator's intent, a court may consider, for example, "signed bank signature cards which express the contractual right of survivorship," or the parties may present extrinsic evidence to demonstrate intent as to the type of ownership. *Estate of Bowlin v. Ables*, 766 S.W.2d 193, 195 (Tenn. Ct. App. 1988).

Here, Appellee's testimony is the only evidence from which we may adduce Decedent's intent in establishing the CDs. At trial, Appellee testified that she became aware of the CDs in the 1980s when she began to assist Mrs. Kirkman with her business affairs. By that time, Mrs. Kirkman had unilaterally established the CDs in joint tenancy with Appellee. As noted by the trial court, as a joint tenant, Appellee shared in the property in equal ownership of the whole and, thus, was entitled to the funds from the CDs after each maturation period. *See* 20 Am. Jur. 2d Cotenancy and Joint Ownership § 4 (2016) (describing the general rights of joint owners). Appellee never exercised this right; instead, Appellee testified that she renewed the CDs in her name and Mrs. Kirkman's name, as joint tenants with right of survivorship, because it was Mrs. Kirkman's wish to have the CDs remain in joint tenancy. The exhibits indicate that, at the time of Decedent's death, the CDs were held by Appellee and Decedent as joint tenants with right of survivorship. In the absence of any countervailing evidence, we conclude that the trial court correctly held that the CDs passed to Appellee as the surviving joint tenant.

In addition to providing no evidence to counter Appellee's testimony, concerning Decedent's intent, Appellants have made no argument that Appellee: (1) exercised undue influence over Mrs. Kirkman; (2) had a confidential relationship with Mrs. Kirkman; or (3) committed any fraudulent act. Rather, Appellee testified that Mrs. Kirkman had lived alone since the mid-1970s, "was her own boss," maintained her own property, and received her own mail, including all information about her finances. The mere fact that Appellee is Mrs. Kirkman's daughter is insufficient, standing alone, to support a finding of undue influence or fraud. *See Kelly v. Allen*, 558 S.W.2d 845, 848 (Tenn. 1977) ("[a] normal relationship between a mentally competent parent and an adult child is not per se a confidential relationship and it raises no presumption of invalidity…"); *Harper v. Watkins*, 670 S.W.2d 611, 827-28 (Tenn. Ct. App. 1983) ("the relationship of a parent and child standing alone does not create a confidential relationship, the first requisite toward the presumption of undue influence."). Appellee also testified that she was not present at the time Decedent opened the CDs, and she was not aware, until she began helping Decedent with her business affairs, that Decedent had established the CDs. Given that the only evidence is that Decedent acted independently in initially establishing the CDs in joint tenancy with Appellee, and given that the CDs were always renewed as joint tenancies, there is simply no evidence to suggest that Appellee "destroy[ed] [Decedent's] free agency" or otherwise usurped Decedent's intent when Appellee renewed the CDs as joint tenancies with right of survivorship. *Bills v. Lindsay*, 909 S.W.2d 434, 440 (Tenn. Ct. App. 1993).

Appellants contend that Tennessee Code Annotated Section 45-2-703 acts as a statutory bar to Appellee's ownership of the CDs because Decedent did not sign the signature card when the CDs were last renewed before Decedent's death. Although the parties agree that Decedent did not sign the signature cards, which were admitted as exhibits,[4] Appellants' reliance on this statute is misplaced. This Court has held that the Tennessee Code Annotated Section 45-2-703(d)(1) requirement that the signature card be signed by both parties "[w]hen opening a multiple-party deposit account" does not apply to certificates of deposit. *Roberts v. Roberts*, 827 S.W.2d 788, 796 (Tenn. Ct. App. 1991). In *Roberts*, we specifically held that "[t]he reference [in Tenn. Code Ann. § 45-2-703(d)(1)] is obviously to the signature card[,] which was ordinarily used by banks for accounts subject to withdrawals. The statute *does not apply to certificates of deposit*[,] which require no signature card and provide no withdrawal until maturity." (emphasis added). Accordingly, the fact that Decedent did not sign these signature cards is not dispositive, or even relevant, to the question of whether Decedent intended to establish the CDs as joint tenancies with right of survivorship.

Finally, Appellants argue that the trial court erred in allowing Appellee to testify, over their objection. Appellants' brief states broadly that "[t]he entirety of [Appellee's] testimony should have been excluded," under the Dead man's statute, Tennessee Code Annotated Section 24-1-203, which provides:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any *transaction with* or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party.

(emphasis added). This Court has defined the term "transaction," as used in the Dead man's statute, as follows:

> A "transaction" within the meaning of the [Dead Man's Statute] is an action participated in by witness and decedent, or something done in decedent's presence, to which, if alive, he could testify of his personal knowledge, and the term embraces every variety of affairs, the subject of negotiations, actions or contracts. It has also been said that personal transactions and communications with a person since deceased include every method by

---

[4] We note that the three signature cards are the only three exhibits in the record; however, the parties reference sixteen exhibits filed in the trial court. Because these additional exhibits are not included in the record, we cannot consider them. *Chiozza v. Chiozza*, 315 S.W.3d 482, 489 (Tenn. Ct. App. 2009) ("This Court's review is limited to the appellate record and it is incumbent upon the appellant to provide a record that is adequate.") (citing *Jennings v. Sewell-Allen Piggly Wiggly*, 173 S.W.3d 710, 713 (Tenn. 2005)).

which one person can derive any impression or information from the conduct, condition or language of another.

*In re Estate of Lang*, No. E2006-00279-COA-R3-CV, 2007 WL 2198449, at *5 (Tenn. Ct. App. July 31, 2007) (quoting *Brown v. Fuqua*, 9 Tenn. App. 22, 1928 WL 2168 (Tenn. Ct. App. 1928)). The *Lang* Court further explained that:

> [t]he test laid down for ascertaining what is a 'transaction with' the deceased, within the intendment of the statute, is 'to inquire whether, in case the witness testify falsely, the deceased, if living, could contradict it of his own knowledge.'

*Id.* at *6 (quoting *Newman v. Tipton*, 466, 234 S.W.2d 994, 996 (Tenn. 1950) (citing *Bankers' Trust Co. v. Bank of Rockville Ctr. Trust Co.*, 168 A. 733, 739 (N.J. 1933))).

In the first instance, Appellants' brief does not specifically indicate which portions of Appellee's testimony should be subject to the Dead man's statute, and it is illogical that "the entirety of [Appellee's] testimony should have been excluded" under the statute. "It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived," *Sneed v. Bd. of Prof'l Responsibility of Sup. Ct.*, 301 S.W.3d 603, 615 (Tenn. 2010). However, in the interest of full adjudication of Appellants' issues, we exercise our discretion to proceed with an analysis of the applicability of the Dead man's statute. Tenn. R. App. P. 13(d). We exercise this discretion only because Appellants' objections, under the Dead man's statute, are preserved in the record. In order to preserve an issue for appellate review, a party must raise the issue in the trial court. Specifically, "[f]ailing to make a timely, *specific* objection in the trial court prevents a litigant from challenging the introduction of inadmissible evidence for the first time on appeal." *Wright v. United Servs. Auto. Ass'n*, 789 S.W.2d 911, 914 (Tenn. Ct. App. 1990). Having reviewed the transcript, we find two instances where Appellants objected to Appellee's testimony on the ground of preclusion under the Dead man's statute:

Q. When did you first become aware that [Mrs. Kirkman] had CDs or had been depositing or creating CDs?

A. Possibly in the [19]80s… when she first let me do her bank work for her. I knew at that time. I was legally – could do it legally and she would at that point tell me that she wanted them renewed.

MR. ABERNATHY: Your Honor, please. I believe the [D]ead man's statute excludes testimony by a party that they had with the deceased. We would object to that.

- 8 -

MR. DONAHOE:    The specific allegation that he raises is M[r]s. Kirkman's state of mind in creating the CDs.  There is no other way to present the evidence than what her intent was and what her instructions were to this witness as far as the creation of the CDs.

THE COURT:  I'm going to allow the testimony.  It's a preface of her taking some action in response to this conversation.  Plus I'm not sure that this is excluded under the [D]ead man's statute except it has to do with some transactions between the parties.

It's a little unclear about that at this point.  So I'm going to let that in at this point.

Q.     Did you at some point discover either by talking with your mother or by seeing the documentation from the banks that she had created a joint CD with you on it?

A.     Yes, sir.   The one from Farmer's Merchant's Bank with her signature had her name or my name.  There was one that my brother left her when he died.

At that point when she moved the CD from as I think at that time it was with National Bank.   At that point she already established both names.

* * *

Q.     Was there ever a discussion you had with your mother about these CDs?  Did you discuss that from time to time?

A.     When they were to be renewed, yes, we did discuss it.  She would tell me exactly what she wanted me to do with them.

MR. ABERNATHY:  I don't want to be a Jack in the Box and object each time, but obviously my objection continues to Ms. Hardin testifying about any discussion she had with her mother.

THE COURT:  Well, I'm going to overrule the objection based on the grounds I stated before.  Transactions between the executrix – I mean, the deceased and plus the – she took action based on these conversations.

And I understand your objection, Mr. Abernathy, but I am going to overrule it. If I'm wrong the Court of Appeals can change it.

As set out above, the Dead man's statute precludes Appellee's testimony concerning "conversations" or "transactions" with Decedent. Accordingly, Appellants' objections to Appellee's testimony concerning her conversations with Decedent regarding renewal of the CDs should have been sustained under the Dead man's statute. Specifically, the Dead man's statute bars Appellee's testimony that: (1) Decedent "[*told*] [Appellee] that [Decedent] wanted [the CDs] renewed;" and (2) when the CDs were renewed, Appellee and Decedent "did discuss it. [Decedent] would tell [Appellee] exactly what she wanted [Appellee] to do with them." Although the trial court abused its discretion in allowing the foregoing portions of Appellee's testimony, *see **State v. Banks***, 271 S.W.3d at 116, the admission of improper evidence of a fact in issue is harmless where the verdict or judgment is supported by sufficient competent evidence. ***Berke v. Chattanooga Bar Ass'n***, 436 S.W.2d 296, 304 (Tenn. Ct. App. 1968). We now turn to review the remaining evidence that is not subject to the Dead man's statute.

Although the portions of Appellee's testimony referencing conversations with Decedent regarding the CDs is not admissible, the germane portion of Appellee's testimony is not the conversations she had with Decedent, but rather that Appellee, through her own reconnaissance, discovered that Decedent had initially established the CDs in joint tenancy with Appellee. In the portions of her testimony set out above, Appellee states that she first discovered the CDs well after Decedent opened them and that Decedent established the CDs without Appellee's knowledge: "At that point [Decedent] already established [the account in] both names." Appellee's own research and subsequent discovery of the CDs is not a "transaction between" Decedent and Appellee; it is a fact that Appellee discovered on her own and, as such, is not precluded under the Dead man's statute. Because there is material evidence, outside the Dead man's statute, to support the trial court's ultimate holdings, we conclude that the trial court's overruling of Appellants' Dead man's statute objection was harmless error. ***Berke***, 436 S.W.2d at 304.

From the permissible testimony, we can reasonably glean that Decedent intended the CDs to be held in joint tenancy with Appellee. As evidenced by the exhibits, at the time of Decedent's death, the disputed CDs were still held in joint tenancy with Appellee. In other words, the evidence supports the trial court's finding that Decedent initially intended to establish the CDs in joint tenancy with Appellee, and the structure of the CDs never changed. Accordingly, the trial court properly held that the CDs passed directly to Appellee and were not probate assets.

- 10 -

## V. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed, in equal part, to the Appellants, Gary Henley, Angelia Durbin, Jerry Henley, and Wayne Henley, and their surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE