## HAMILTON NATIONAL BANK OF KNOXVILLE

### v.

### Eliza M. ALLRED et al.

Court of Appeals of Tennessee, Eastern Section.

June 20, 1972.

Certiorari Denied by Supreme Court June 18, 1973.

Ivan T. Privette, of Privette & Mann, Knoxville, for appellant.

W. Conway Garlington, of Carty & Garlington, Arthur B. Stowers, Jr., Knoxville, James R. Lyle, St. Petersburg, Fla., for appellees.

## OPINION

SANDERS, Judge.

The guardian ad litem of unborn and unknown heirs of deceased testator has appealed from a decree construing a will, which decree he insists is adverse to their interest.

Charles Ernest Allred died testate in Knox County, Tennessee, in 1970, leaving a widow, two daughters and nine grandchildren surviving.

The Plaintiff, Hamilton National Bank of Knoxville, qualified as executor and trustee of the will and brought suit in Part I of the Chancery Court of Knox County for construction of various provisions of the will.

The case was heard before The Honorable William P. Newkirk, Chancellor, without the intervention of a jury.

As pertinent here, the substance of the will provides that after the payment of all debts and other collateral distributions the entire estate is to be held in trust, one-third of the net income being paid to his widow during her lifetime, and one-third to each of his two daughters. It provides that upon the death or remarriage of the widow the one-third share of the net income heretofore paid to her shall be withheld, accumulated, and added to the corpus or principal of the trust estate. Upon the death of each of the daughters, their one-third is to be paid to their descendants per stirpes. In the event of the death of one of the daughters and all of her descendants during the life of the trust, two-thirds of the net income is to be paid to the surviving daughter or her descendants per stirpes. The trust is to remain in effect until 20 years after the death of the last one of the testator's descendants living at the time of his death. If all of the testator's descendants should die before the expiration of the 20-year period, then the trust would terminate. Upon termination of the trust, the corpus is to be divided one-half to the descendants of each of the daughters per stirpes, or, if either daughter has no surviving descendants, then per stirpes to the surviving descendants of the other daughter. In the event neither daughter should have surviving descendants, the trust estate is to be distributed to the University of Tennessee, certain of its colleges and one of its fraternities.

The will also provides that certain types of income is not to be distributed as net income, but is to be added to the principal of the trust estate. It also specifies certain specific expenses which are to be charged against net income and not against the income which is to be added to the corpus.

At the time of his death the testator's estate was valued at approximately $1,150,000.00, composed of approximately $200,000.00 in stocks and bonds, 334 cheap rental houses in Knoxville, approximately 4,000 acres of timber and farm land in Overton County, and a one-half interest in a 265-acre tract of land in Wayne County, Kentucky, together with the home place which had a value of $26,000.00.

The widow elected to dissent from the will and by agreement of the parties she was awarded a life estate in a one-third undivided interest in all of the real estate located in Overton County and whatever dower rights she is entitled to under the laws of the State of Kentucky in the 265-acre tract of land. She was also awarded

the fee simple title to the home place and $90,000.00 in cash together with $8,100.00 due as income from the estate up to July, 1971. In addition to this she had been awarded a year's support of $30,000.00.

At the conclusion of the proof the Chancellor filed a memorandum opinion and finding of fact construing various provisions of the will. A decree was entered in keeping with the opinion and findings of fact and the guardian ad litem for the unknown and unborn heirs has appealed to this court and assigned error.

The assignments of error address themselves to the Court's construction of two separate provisions of the will.

The first assignment of error relates to the Court's construction of the following provisions of the will:

"-V-

\*   \*   \*   \*   \*   \*

"(D). I direct my Executors and Trustees to set aside for the use of my beloved wife the sum of FIFTEEN THOUSAND DOLLARS ($15,000.00), which shall be invested in sound securities (see suggestions to Executors and Trustees hereinafter set out), and to pay the said sum to her in approximately equal monthly installments over the period of three years following the date of my death;

\*   \*   \*   \*   \*   \*

"-VIII-

"As soon after the date of my death as my Executors and Trustees can determine with reasonable certainty the amount of net income (as hereinafter defined) to be derived annually from my estate, subject to certain conditions and provisions hereinafter set out, they shall distribute such net income from said Trust Estate in monthly installments:

"(A). One-third to my daughter, Helen Allred Lyle, and upon her death to her descendants per stirpes;

"(B). One-third to my daughter, Elizabeth Allred Johnson, and upon her death to her descendants per stirpes;

"(C). Beginning three years after the date of my death (during which three-year period the remaining one-third of such net income shall be accumulated and added to the principal of the Trust Estate), provided she shall not have remarried, one-third to Eliza M. Allred so long as she remains my widow;

"(D). Upon the death or remarriage of my widow the one-third share of such net income theretofore paid to her shall be withheld, accumulated and added to the corpus or principal of the Trust Estate. . . . ."

As to this portion of the will, the Chancellor held that, since the widow had dissented from the will and the amount awarded to her had been withdrawn from the corpus of the estate, the net income from the remaining portion of the trust estate should be divided 50–50 between the two daughters and their descendants per stirpes. The Court said:

". . . So, the testator obviously did not take into consideration the effect of the law with respect to the widow's dissent, which dissent was occasioned by the above stated economic conditions, and which dissent removed a substantial portion of the income potential from the estate he had accumulated over the years. But, since it was Dr. Allred's intent to treat his two daughters equally from the balance of the income from his estate after providing for the widow, and since the widow is now provided for by law, by virtue of the dissent (and the corpus of the estate was to that extent invaded), the intention of the testator to provide equally for the two daughters after providing for the widow should be continued to be given effect. Therefore,

the daughters and their descendants per stirpes should share fifty/fifty in the income from the corpus of this estate that is left after the widow's portion is determined and removed therefrom."

Appellants insist that it was error for the Court to arbitrarily award all of the net income of the remaining trust estate to the two daughters and their descendants. They contend that the widow received less than one-third of the corpus and the daughters cannot receive more by virtue of the widow's dissent than they could have received had she not dissented from the will.

■ It is such a well-settled principle of law that the true intent of the testator shall prevail in the construction of a will that it is useless to cite cases in support of this proposition. In the construction of a will it is presumed that the testator had knowledge of his widow's right to dissent. Cochran v. Garth, 163 Tenn. 59, 40 S.W.2d 1023; Albright v. Albright, 192 Tenn. 326, 241 S.W.2d 415.

■ Although the election of the widow to dissent from a will and take under the law may defeat some of the arrangements made by the will or accelerate some of the legacies, it does not affect the construction of the will. Pritchard on Wills, Vol. 2, § 766, p. 301.

■ In this state it is generally recognized that where a life estate is created in the widow and she dissents from the will, her dissent accelerates the remainder interest to the same extent as if she had died. Meek v. Trotter, 133 Tenn. 145, 180 S.W. 176; Albright v. Albright, *supra*.

The provisions of the will that "upon the death . . . of my widow the one-third share of such net income theretofore paid to her shall be withheld, accumulated and added to the corpus or principal of the trust estate," had the effect of accelerating this remainder interest upon the dissent by the widow to the same extent as if she had died.

This brings us to the question of whether or not there is any portion of the widow's one-third to pass under this provision of the will.

In the case of Meek v. Trotter, supra, the Court said:

". . . . Such waiver or dissent by the widow blots out all the provisions of the will for the widow, and leaves the remaining provisions of the will in force, to be accommodated equitably to the state of the testator's property as left by such action. The will is to be enforced notwithstanding, as nearly in accordance with the scheme devised by the testator as it can be."

The Court further quoted with approval:

"Woerner, in his work on Administration, says on this subject:

" 'The rejection by the widow of the provisions made for her by the will generally results in the diminution or contravention of devises and legacies to other parties. The rule in such case is that the devise or legacy which the widow rejects is to be applied in compensation of those whom her election disappoints.'

"In the case of Jones v. Knappen, 63 Vt. 391, 22 Atl. 630, 14 L.R.A. 293, there were involved the rights of such residuary legatees. The court, declaring the true doctrine, said:

" 'The controlling, and, we think the more reasonable principle, announced in most of these cases, is the one expressed by *Woerner*, supra, viz., to use the renounced devises and legacies given by the will to the widow, to compensate so far as may be, the devises and legacies diminished by such renunciation. . . .' "

"It is generally recognized that while an election by a surviving spouse against the will of the deceased spouse must necessarily disrupt the testator's scheme as to the distribution of his estate, at least to some extent, it is the duty of the

court to carry out such scheme with respect to the rights of the other beneficiaries named in the will as nearly as is possible in accordance with the testator's intentions. It has, for example, been said that a widow's election to take against her husband's will does not, except as it may reduce the corpus of the estate, divert the remainder from its course of distribution. . . ."

Am.Jur. 57, 1054, Wills § 1549.

Pleadings in this case did not raise the issue, nor was there any proof offered, to establish to what extent the net income of the trust estate was diminished as a result of the widow's dissenting from the will.

■ Under the facts and the law applicable to this case, if the corpus of the trust estate was reduced by the dissent of the widow to the extent that it will not produce more than two-thirds of the income it would have produced had she not dissented from the will, then the decree of the Chancellor will be affirmed. If, however, the amount which the daughters and their descendants would receive under the decree of the Chancellor would exceed the two-thirds of the net income which they would have received had the widow not dissented, then the decree of the Chancellor will be modified to provide that such excess shall be paid in accordance with the provisions of the will.

The second portion of the will construed by the Chancellor, to which the Appellants have assigned error, is as follows:

"-IX-

"In determining net income of the Trust Estate for distribution periodically among the beneficiaries, the following are not to be included, but are to be added to the principal of the Trust Estate:

"(A). Coal royalties;

"(B). Gains from sale or exchange of assets;

"(C). Proceeds from sale of timber;

"(D). Proceeds from sale of farm products;

"(E). Stock dividends;

"(F). Proceeds from sale of stock rights.

"There is to be charged against such net income:

"(A). Federal income taxes on coal royalties; gain from sale or exchange of assets, sale of timber, sale of farm products, and undistributed income;

"(B). County and City real estate taxes, including such taxes on the home place;

"(C). County and City personalty and ad valorem taxes;

"(D). Fire insurance premiums;

"(E). Premiums paid upon bonds purchased;

"(F). Major repairs made on the home place."

■ In construing this provision of the will, the Chancellor held that the income from the first five items listed under "(A)" through "(F)" was not distributable as net income, but was to be added to corpus or principal.

As to the list of charges to be made against net income, he held that the items listed in "(B)" through "(F)" should be charged against net income, but that federal income taxes listed in "(A)" should not be paid out of net income, but out of the proceeds of the funds which generated the tax. In his memorandum opinion the Court said:

"The Court was further asked for interpretation of the second part of Section IX wherein various items are to be charged 'against such net income.' It appears to the Court that the word 'such' refers to the net income itemized in the first part of Section IX, i. e. (a) Coal

royalties, (b) Gains from the sale or exchange of assets, (c) Proceeds from the sale of timber, (d) Proceeds from sale of farm products, (e) Stock dividends, and (f) Proceeds from the sale of stock rights. In examining the six items to be charged, it appears that Subsection (A), (Federal Income Taxes on Coal Royalties, gain from sale or exchange of assets, sale of timber, sale of farm products, and undistributed income;) should have a comma after 'royalties' instead of a semicolon. It further appears to the Court in referring to Subsection (A) of the items to be charged, that it was the intention of the testator that these Federal Income Taxes would be charged against the items mentioned therein and also mentioned in the first part of Section IX, which items are excluded from the distributable income of the estate. In other words, it appears that any federal income tax generated by any of the sources of income not available for distribution, would be borne by the source of income that generated or made necessary the tax. The guardian ad litem for the unborn and unknown heirs of the testator insists that these federal income taxes on the excluded items should be borne by the income available for distribution to the beneficiaries, and not borne by the income that generated the tax or incurred the tax liability. The Court does not believe that such an interpretation is justified, because it is readily apparent that the income tax generated by the six excluded sources of income would not only place an unreasonable burden upon the income available for distribution to the beneficiaries, but would, in all probability, completely eliminate the income available for distribution, thus, completely thwarting the intent of the testator to provide for his daughters. . . . ."

It is to this construction that Appellants have assigned error, and we must agree.

The Chancellor says that the word "such" refers to net income itemized in the first part of Section IX. If this be true, all of the expenses listed in "(A)" through "(F)" would have to be charged to the above-listed items of income. Income taxes cannot be singled out and distinguished from the other items of expense. The Chancellor says there should be a comma after "royalties" instead of a semicolon. We are unable to find his reasoning for this finding, but, even if true, it wouldn't change the meaning of the will. To say that the federal income taxes should not be paid out of net income because it would diminish the distributable income to the wife and daughters would be to substitute what we think the testator intended to say for what he actually said.

Our Supreme Court, in addressing itself to the question of our courts' determining the intention of the testator, speaking through Chief Justice Neal, in the case of Burton v. Kinney, 191 Tenn. 1, 231 S.W.2d 356, 358, said:

"Precedents are of little aid in deciding cases involving the testator's intention. In Rood on Wills, 2d Ed., Section 413, it is said: 'If by the use of plain and unambiguous language, he has made his meaning clear and certain, his will expounds itself, and all the court can do is to give it effect. *All doubts must be resolved in favor of his having meant just what he said.* The courts have no right in such cases to resort to a fanciful or conjectural construction, grounded on the circumstances of his property, his family, or himself.' (Emphasis supplied.)"

Appellants' second assignment of error is sustained.

The case is remanded generally and specifically for hearing proof as to what extent the net income of the estate was diminished by the widow's dissent from the will and for the entry of a decree in keeping with this opinion.

The cost of this appeal is taxed to the estate.

COOPER, P. J. (E.S.), and PARROTT, J., concur.