MERCHANTS & PLANTERS BANK, Executor of the Estate of J. Lacy Myers, Plaintiff-Appellee,

v.

Esther Hoss MYERS, Defendant-Appellee, Appellant,

Nelle Myers Harrison, Defendant-Appellant.

Court of Appeals of Tennessee, Eastern Section.

Aug. 12, 1982.

Rehearing Denied Sept. 3, 1982.

Permission to Appeal Denied by Supreme Court Dec. 27, 1982.

Edward F. Hurd, Newport, for defendant-appellee, appellant.

Fletcher L. Ervin, Newport, for defendant-appellant.

Roy T. Campbell, Jr., of Campbell, Hooper & Shults, Newport, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

In this declaratory judgment action, the executor of the estate of J. Lacy Myers sought the direction of the court on administering the estate following a dissent from the will by the widow. The chancellor made numerous rulings and both the testator's sister and his widow have appealed.

J. Lacy and Esther Myers were married in 1934 and had no children. Myers, over his lifetime, accumulated a substantial estate, owning a Chevrolet agency in partnership with John Abe Teague, several farms, a shopping center, and banking interests. At his death on May 4, 1978, he was survived by his wife and a sister, Nelle Myers Harrison. Myers' will was probated and the named plaintiff herein was appointed executor of the estate. The will provided specific bequests to some twenty-five persons and organizations. Some $13,800.00 was bequeathed in cash to these beneficiaries. The widow, the sister and John Abe Teague, who already owned one-fourth of the corporate stock of the Chevrolet dealership, were each given the corporate stock of the dealership owned by the deceased. The widow was to receive the home and adjoining land and the sister was to receive Myers' ancestral home and farmland in the Parrottsville community.

The residuary estate was to be placed in trust for the benefit of the widow and sister during their lifetime with the corpus of the trust to be delivered to deceased's niece upon the death of both lifetime beneficiaries.

Several hearings were held before the chancellor and during the course of the proceedings all parties stipulated the values of the estate's assets used in preparing the state and federal tax returns were the correct values for purposes of determining the widow's elective share, with the exception of decedent's half undivided interest in the Myers Chevrolet Building, which value was stipulated to be $120,000.00, or $25,000.00 more than the value shown for tax purposes.

The court, based upon the stipulated value of the estate of $1,443,710.78, computed the widow's elective share as $421,559.64. The chancellor then ruled that estate and inheritance taxes were not payable from the widow's share and the court further directed that the widow's share be paid in cash with the exception of the home, which was awarded to the widow and its value deducted from her overall award. The chancellor further held that the proceeds of two certificates of deposit in the name of J.

Lacy Myers or Nelle Myers Harrison passed to the sister outside the estate.

John Abe Teague died intestate on November 24, 1980, and, on February 18, 1981, his heirs and the executor of this estate petitioned the court to sell the jointly owned property of the deceased Myers and Teague, the Myers Chevrolet Building and lot. After an evidentiary hearing, the court determined the testator's undivided one-half interest in the property, had "a fair and reasonable market value" of $97,500.00, and approved a sale of decedent's interest for that amount.

The sister's initial issue is whether the chancellor erred in ruling the effective date for determining the dissenting widow's elective share was testator's date of death.

The present right of a surviving spouse to elect against a deceased spouse's will was created by Chapter 25 of the Public Acts of 1977, as codified in *T.C.A.,* § 31–601, which states:

> *Right to elective share.*—The surviving spouse shall have a right of election to take an elective share of one-third (⅓) of decedent's net estate as defined by § 31–602(b).[1] Such elective share, when so determined, shall be exempt from the debts and charges of the decedent incurred after April 1, 1977.

■■■■ Our Supreme Court addressed this issue under the prior statute thusly: "The right of a widow to claim the benefits . . . as a dissenting widow . . . exists as of the date of death, although the realization may be postponed until appropriate steps are taken. It is at the time of death that the entire substance of the right is fixed, . . ." *Marler v. Claunch,* 221 Tenn. 693, 698, 430 S.W.2d 452 (1968). Moreover, the will from which the spouse dissents speaks from the death of the testator. *Am. Nat. Bank v. Embry,* 181 Tenn. 392, 181 S.W.2d 356 (1944). We conclude the chancellor properly evaluated the estate for dissent purposes.

■■■ An adjustment is required when there is either appreciation or depreciation of assets prior to distribution of the spouse's elective share. A good comment on this issue is contained in 7 A.L.R.4th 989, § 3, *Appreciation and Depreciation:*

> No matter when a surviving spouse's election against the deceased spouse's will takes place, and no matter when the final distribution takes place, the rights elected are regarding as vesting at, and therefore dating back to, the time of the death of the testator. However, clearly the value of the estate assets may either appreciate or depreciate during the period between the time of the death and the time of distribution. Various formulas, whether directed in terms to the time when the net value of the estate should be determined or to the determination of the proportionate sacrifice or share, to be allocated between the electing spouse and the will beneficiaries, out of the appreciation or depreciation realized during the administration period, have been evolved or applied. Regardless of the formula applied, it has been generally held without exception, as indicated by the following cases, that the electing spouse shares in the losses or gains, as the case may be, engendered by changes in the value of the estate assets up to the time of distribution. At p. 993.

The evidence adduced at the partition hearing suggests the stipulated value of the Myers Chevrolet Building did not reflect the property's true value as the parcel was valued on tax returns at $95,000.00. The estate has been under administration for approximately four years and the widow should properly share in any gains or losses experienced prior to the distribution of her share. Upon remand, the executor is directed to take into account all gains and losses as of the time of the distribution and adjust the widow's elective share accordingly.

---

1. *T.C.A.,* § 31–602. *Decedent's estate—Net estate.*—

. . . . .

(b) The net estate shall include all of the decedent's property reduced by funeral and administration expenses, homestead, exemptions, and year's support.

The sister takes issue with the chancellor's determination the widow was not to pay any state inheritance taxes and the argument is made that, prior to the adoption of Chapter 763 of the Public Acts of Tennessee of 1978, the net estate for the purpose of computing the value of the widow's elective share included all of the decedent's property reduced by the funeral and administrative expenses, homestead, exemptions, year's support and the payment of taxes. The '78 Act deleted the words "the payment of taxes". This statutory change does not render this provision in conflict with *T.C.A.*, §§ 30–1601, *et seq.*, but rather establishes the formula for determining the net estate for determining the widow's elective share. *See In Re Peters' Will*, 275 App.Div. 950, 89 N.Y.S.2d 651 (1949). In the absence of a testamentary provision to the contrary, federal estate and state inheritance taxes are to be apportioned rateably among those taking the property. *T.C.A.*, § 30–1117, *T.C.A.*, §§ 30–1601, *et seq.* Our inheritance tax is a tax upon the privilege of receiving property and case decisions place the financial onus of payment upon the beneficiaries under the will, absent testamentary direction. *See Murfreesboro Bk. & Trust Co. v. Evans*, 193 Tenn. 34, 241 S.W.2d 862 (1951); *Hutchison v. Montgomery*, 172 Tenn. 375, 112 S.W.2d 827 (1938).

The chancellor, we believe, however, reached the correct result. The testator's will provides:

I direct my Executor to pay all of my just debts and funeral expenses and all taxes, estate, inheritance or otherwise, which may be or become due. No such tax so paid shall be charged against any beneficiary, but shall be paid as a debt of my estate without regard to whether or not the assets so taxed are included in my estate for purpose of administration.

We note at the outset that the testator is charged with the knowledge of the widow's right to dissent at the time of making the will and the widow's dissent does not affect the construction of the will. *Cochran v. Garth*, 163 Tenn. 59, 40 S.W.2d

1023 (1931). In addition, the testator further directed:

I direct that my Executor heretofore named, sell all of my stock in the Merchants and Planters Bank for the purpose of paying the expenses of administration of my estate, including the payment of State and Federal inheritance and estate taxes. Should the amount received from this source prove to be inadequate, then this may be supplemented from other assets of my estate.

The term "all taxes" is broad enough to exonerate nontestamentary property from the burden of such taxes. *See Wolfe v. Mid-Continent Corp.*, 222 Tenn. 348, 435 S.W.2d 836 (1968). *Accord: Buffington v. Mason*, 327 Mass. 195, 97 N.E.2d 538 (1951). *Also see Third Nat. Bank in Nashville v. Cotten*, 536 S.W.2d 330 (Tenn.1976). We conclude the testator intended all taxes be paid by the executor from the specific fund whether the wife dissented or not.

The next two issues are combined for discussion. Testator's sister objects to the chancellor's order requiring the elective share to be satisfied in cash and disallowing expenses incurred in converting the assets to cash to pay the elective share as administrative expenses affecting the net estate as defined in *T.C.A.*, § 31–602(b). Where a spouse dissents, the whole estate is opened in order that the dissenting spouse may obtain the statutory benefits as if the deceased spouse had died intestate. *See Allen v. First American National Bank*, 52 Tenn.App. 544, 376 S.W.2d 713 (1963), and cases cited therein. The procedure for establishing the elective share is set forth in § 31–603, and vests the trial court with discretion in determining the elective share. The elective share is to be determined in such manner as not to defeat the arrangements made by the will unless reasonably necessary to fully protect the dissenting spouse's share, *see Hamilton National Bank of Knoxville v. Allred*, 496 S.W.2d 497 (Tenn.App.1972), and where the value of the estate's assets are fixed and not in dispute the dissenting spouse should be given the choice as to whether to accept "a

fund or property in kind or in cash". *See Flanigan v. Landmon,* 8 Tenn.App. 361 (1928). In the absence of objection by the widow, we affirm the chancellor's order directing the executor to liquidate, as necessary, estate assets for the purpose of satisfying the widow's elective share.

█ *T.C.A.,* § 31–602(b), however, requires the elective share to be reduced by administration expenses. Expenses incident to the sale of property by the executor are administration expenses, *American Nat. Bk. & Trust Co. v. Mander,* 36 Tenn.App. 220, 253 S.W.2d 994 (1952), and the widow's distributive share should be reduced in accordance with the statute by the administrative expenses incurred in the sale of the estate assets.

█ The sister insists the estate is liable for her attorney's fees in defending the declaratory judgment suit. The chancellor concluded each of the parties would be responsible for their own attorney's fees; we agree. As a general rule, for attorneys' fees to be allowed out of an estate, the attorney must have been employed by the personal representative of the estate; however, there is an exception where an attorney's services have inured to the benefit of the estate and, in those cases, the court has discretion to allow fees. *Pierce v. Tharp,* 224 Tenn. 328, 455 S.W.2d 145 (1970); *Davis et al. v. Mitchell et al.,* 27 Tenn.App. 182, 178 S.W.2d 889 (1943). The evidence supports the chancellor's conclusion that the legal services rendered by the sister's attorney inured to her benefit as one claiming an interest in the estate rather than to the entire estate. The claim is denied.

Next, decedent's sister questions the chancellor's order that the residuary be-

quest be liquidated prior to specific bequests to satisfy the elective share. She insists *T.C.A.,* § 31–603(d) requires the court to fix the liability for the elective share in equal proportions against all beneficiaries.[2] *Meek v. Trotter,* 133 Tenn. 145, 180 S.W. 176 (1915), establishes where the widow dissents the provisions of the will for the widow are blotted out and the remaining provisions are left in force and the will is to be equitably enforced as nearly in accordance with the scheme devised by the testator as can be. *Meek* and the earlier case of *Latta v. Brown,* 96 Tenn. 343, 34 S.W. 417 (1896), recognized, without clearly embracing, the rule that the residuary estate bears the whole loss incident to the dissent unless the intent of the testator is otherwise shown.

█ The statute establishes a statutory right of contribution among all persons in a class of beneficiary whose testamentary interest in a fund or property has been defeated or lessened by virtue of the determination of the elective share. The statute requires the burden of the elective share to be proportioned among all affected beneficiaries. We conclude that should the widow dissent the testator intended the elective share to be established from the residuary estate. Except for the bequest to the widow and the stock bequest to the sister, the specific bequests are relatively small sums and only a small fraction of the estate's value. The chancellor's determination allows the specific bequests to remain undisturbed while the dissenting spouse is given property which she would have been entitled under the will. His determination adheres as closely as reasonably possible to the

---

2. *T.C.A.,* § 31–603. *Proceeding for elective share—Time Limit.—*

   .    .    .    .    .

(d) After notice and hearing, the court shall determine the elective share and shall order its distribution and/or vesting to the surviving spouse or his personal representative. If it appears that a fund or property has been distributed by the personal representative, the court nevertheless shall fix the liability of any person who has any interest in the fund or property or who has possession thereof, wheth-

er as trustee or otherwise. The proceeding may be maintained against fewer than all persons against whom relief could be sought, but no person is subject to contribution in any greater amount than he would have been if relief had been secured against all persons subject to contribution.

(e) The order or judgment of the court may be enforced as necessary in suit for contribution or payment in other courts of this state or other jurisdictions.

testator's distribution scheme after establishing the elective share. We affirm the chancellor.

▮ The sister's final issue questions the chancellor's determination of the meaning of an elective share established by T.C.A., § 31–601, and she argues at no place does the statute state whether an elective share is a fee life estate or other estate and notes that under prior versions of this statute, particularly the 1976 amendment, the widow was provided with a fee simple interest in the testator's realty and personalty and argues when the elective share replaced the distributive share in the statute, the share was diminished to that of a life estate. We cannot agree. The right of the widow to either take under the will or dissent therefrom and take under the statute has long been commonly referred to as "her election." *See Bowers v. McGavock,* 114 Tenn. 438, 452, 85 S.W. 893 (1904). No doubt the term "elective share" was inspired by the Uniform Probate Code. *See* § 2–201 of the official text. *T.C.A.,* § 31–202 provides that dower and curtesy are abolished and *T.C.A.,* § 31–601 provides that a surviving spouse takes a one-third interest in all of decedent's property, reduced by certain enumerated items. These provisions establish the legislature intended for the surviving spouse to take a fee simple title in properties comprising the elective share, there being no words of limitation in the legislative grant.

The widow's issue on appeal questions the chancellor's decision that two certificates of deposit, one in the amount of $136,000.00 and the other in the amount of $56,000.00, both payable to J. Lacey Myers or Nelle Myers Harrison, were the property of the survivor and not estate property. The chancellor's findings are:

The sister, Mrs. Harrison, has by the proof shown that the Certificates of Deposit were in her individual lock box at the Merchants & Planters Bank at the time of the death of Mr. Myers. The record further shows that Mr. Myers was not a designated person on the bank records to have access to that particular box, but nevertheless and because of his position he was allowed on almost at will to have access to this lock box of Mrs. Harrison and carried a key therefor, and apparently with the permission and consent of Mrs. Harrison. When all of these factors are taken into consideration the intention of the deceased gleaned from the action of placing the name of Mrs. Harrison upon these Certificates of Deposit the benefits bestowed upon her by his last will and testament and coupled again with the fact that in that same lock box belonging to Mrs. Harrison was another Certificate of Deposit in the name of Mr. Myers alone, which again indicates to the Court that Mr. Myers knew the difference between having a Certificate of Deposit in his own name individually and in the name of himself and someone else.

Deceased had paid income tax on the certificates which had been periodically renewed with the interest added to the principal on the renewal certificates; however, the sister had on occasion been paid the interest for her use.

▮ In this jurisdiction, the contract approach to questions of joint ownership has supplanted the common law approach of joint tenancy with its requirement of four unities. *See Lowry v. Lowry,* 541 S.W.2d 128 (Tenn.1976); *Jones et al. v. Jones et al.,* 185 Tenn. 586, 206 S.W.2d 801 (1947). Under the contract theory, the formal requirements of an *inter vivos* gift are likewise irrelevant, 541 S.W.2d at 130, and the issue is whether the parties intended to create a right of survivorship. *Simmons v. Foster,* 622 S.W.2d 838 (Tenn.App.1981). This intent may be shown by signed bank signature cards which express the contractual right of survivorship. *Melhorn v. Melhorn,* 208 Tenn. 678, 348 S.W.2d 319 (1961); *Iacometti v. Frassinelli,* 494 S.W.2d 496 (Tenn.App.1973). Tennessee courts have recognized that intent as to type of ownership may be established by extrinsic evidence. *Griffin v. Prince,* 632 S.W.2d 532 (Tenn.1982); *Simmons v. Foster, supra; Buntin v. Meriwether,* 56 Tenn.App. 492, 408 S.W.2d 667 (1966). In *Buntin,* the oral

testimony of a nephew was allowed to establish the intent of the depositor at the time the deposits were made. The court, in *Simmons,* required a showing of intent either in the expressed words of the parties or "by necessary implication". P. 841. The evidence before us supports the conclusion of the chancellor that it was the intention of the deceased to establish a joint tenancy with the right of survivorship in the certificates bearing his sister's name. We affirm the chancellor.

The cause is remanded to the trial court and the executor is to proceed in accordance with the directions set forth herein. Costs incident to the appeal are assessed one-half to appellant, Harrison, and one-half to appellant, Myers.

PARROTT, P.J., and SANDERS, J., concur.