HAMILTON BANK OF UPPER EAST TENNESSEE, Executor of the Estate of Lucille Miller Blackburn, Plaintiff–Appellee,

v.

MILLIGAN COLLEGE, Washington College Academy and Berea College, Defendants–Appellees,

Arthritis Foundation, et al., Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

July 25, 1991.

Permission to Appeal Denied by Supreme Court Dec. 30, 1991.

Jimmie C. Miller and John A.A. Bellamy, Hunter, Smith & Davis, Kingsport, for appellants.

Harris A. Gilbert and Daniel B. Brown, Wyatt, Tarrant, Combs, Gilbert & Milom, Nashville, for appellees.

## OPINION

FRANKS, Judge.

The issue presented in this declaratory judgment action to construe a will is who must contribute to the dissenting spouse's share in the estate.

The chancellor granted summary judgment, essentially holding that the testatrix had divided her residuary estate into two parts. We reverse.

Lucille M. Blackburn died testate on October 11, 1988. Item I of her will provides for the payment of her debts out of the estate. Item II of her will gives special bequests of money to her husband, her brother, two friends and a church. Item III of her will names Hamilton Bank as trustee of a trust for Blackburn's sister,

Maud Snodgrass. Item III, after deducting the payments directed in Items I and II, is comprised of "a sum of money equal to two-thirds (⅔) of the balance of the value of my estate". The trust would terminate at the death of Maud Snodgrass and Hamilton Bank was then directed to deliver the corpus of the trust estate to the Arthritis Foundation, American Cancer Society and the Heart Fund in one-third shares. Item IV of the will bequeathed "all the remainder of my property, real, personal, or mixed ..." to Milligan College, Washington College Academy and Berea College in one-third shares.

Maud Snodgrass died shortly after the testatrix's death and the testatrix's spouse decided to take an elective share rather than the $10,000.00 left to him in Item II.

■ The testatrix was presumed to know of her spouse's right to take an elective share, *Cochran v. Garth*, 163 Tenn. 59, 40 S.W.2d 1023 (1931), but no provision was expressly made in the event her spouse elected against the will. Essentially, the chancellor held that the elective share was to be taken under Item II of the will, *i.e.*, from the portion of the testatrix's estate in which provision for the elector was made in the will. This approach has generally been rejected under the rules of construction. *See* 36 A.L.R.2d 291, Anno: *Will—Election Against—Who Bears Loss,* at 293.

■ Tenn.Code Ann. § 31–4–101 defines the elective share as one-third of the decedent's net estate. With few exceptions, the net estate "includes all of decedent's real and personal property subject to disposition under the terms of the decedent's will". When a spouse dissents, the whole estate is taken into account in order that the dissenting spouse may obtain the statutory benefits as though deceased had died intestate. *Merchants & Planters Bank v. Myers,* 644 S.W.2d 683 (Tenn.App.1982).

■ The original bequest in the will for the spouse is excised and the remaining provisions are left in force and the will is enforced as is reasonably possible in accord with the testator's intent. The residuary

estate bears the whole loss incident to the election unless the intent of the testator is otherwise shown. *Id.*, at 688.

In this case, the testatrix separated the trust for her sister from any other provision. The executor was directed to determine the "value" of decedent's estate after Items I and II were satisfied and then to deposit "a sum of money" equal to two-thirds of "the value" in trust for the sister's care throughout the rest of her life.

■ Appellees insist the use of "balance" in Item III makes this item a residuary clause. The use of residuary language is not dispositive. *Davis v. Anthony,* 53 Tenn.App. 495, 384 S.W.2d 60 (1964). The language in the instant case is not as favorable to a residuary reading as was the language in *Davis,* where "rest, residue and remainder" was employed.

■ Comparison of the language of Item III and Item IV is instructive. Item III does not use "remainder" language as does Item IV. It does employ the word "balance"; however, the trust was not measured by two-thirds of the estate. Instead, after payment of Items I and II, the testatrix's estate was to be valued and two-thirds of that value was to be held in trust for her sister's welfare. The use of "balance" was a convenient tool to measure the amount of the estate to be placed in trust and not to connote any residuary.

Of significance is the impact of this calculation on the residuary estate in Item IV. If the testatrix had anticipated her spouse might elect against the will, as we must assume, approximately one-third of the value of the estate assets would be available at the time the trust was formed to satisfy the election.

The testatrix's actions suggest she anticipated her husband's possible election by making the amount of money available under Item IV to the residuary beneficiaries in the approximate amount of the statutory elective share. The structuring language of the will and the intent to care for the sister lead to the conclusion that the testatrix intended to deplete the Item IV residuary estate rather than diminish her sister's

trust. *See Meek v. Trotter*, 133 Tenn. 145, 180 S.W. 176 (1915) (holding that residuary legatees contribute proportionately to an elective share, other legatees do not, even if the residuary estate is thereby exhausted).

We reverse the judgment of the trial court and remand for entry of an order consistent with this opinion. The cost of appeal is assessed to the appellees.

GODDARD and McMURRAY, JJ., concur.