ESTATE OF ATLAS DUNCAN WILLIAMS, DECEASED, CAROLYN S. WILLIAMS, EXECUTRIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8582–93.      Filed September 14, 1994.

*Allan J. Wade,* for petitioner.
*Edsel Ford Holman, Jr.,* for respondent.

OPINION

GERBER, *Judge:* Pursuant to Rule 121,[1] this matter is before the Court on petitioner's motion for summary judgment and respondent's motion for partial summary judgment. The parties seek to determine, as a matter of law, the maximum allowable marital deduction available in determining petitioner's Federal estate tax liability. The parties agree that the marital deduction allowable to petitioner is to be determined pursuant to Tennessee's elective share statute and other related State probate statutes. The issue presented is whether, under Tennessee law, the surviving spouse's calculated elective share must be reduced by a proportionate share of decedent's secured debts in determining petitioner's maximum allowable marital deduction.

Since the parties agree that there is no issue as to any material fact with respect to the specific legal question before us, this matter is ripe for summary judgment. The facts set forth below are based on the pleadings and other pertinent materials in the record. Rule 121(b).

Atlas Duncan Williams (decedent) was a resident of Shelby County in Memphis, Tennessee, on the date of his death, May 17, 1989. Decedent's last will and testament was admitted to probate on May 22, 1989. Decedent was survived by his wife and two children. Decedent's surviving spouse, Carolyn S. Williams (Mrs. Williams), qualified as executrix of decedent's estate.

A timely filed estate tax return reflected a gross estate of $102,702,150, secured debts of $37,745,758, a marital deduction of $64,098,005, other debts and expenses of $258,387, and a zero estate tax liability. No alternate valuation date was chosen on the estate tax return, and all values were determined as of decedent's date of death. Several months after the estate tax return was filed, Mrs. Williams timely filed a petition for an elective share and a year's support, as permitted by Tenn. Code Ann. sec. 31–4–101 (Supp. 1993). Pursuant to that election, Mrs. Williams was entitled to take an elective share outright rather than to share in decedent's will, which placed the corpus of decedent's estate in two trust

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code in effect on the date of decedent's death, unless otherwise indicated.

accounts and provided Mrs. Williams merely with income interests in the trusts.[2] The election also caused the marital deduction reported on decedent's estate tax return to be recomputed based on the value of the elective share interest passing to Mrs. Williams.

On May 21, 1992, the Shelby County Probate Court entered an order granting Mrs. Williams an elective share equal to one-third of decedent's net estate pursuant to Tenn. Code Ann. sec. 31–4–101(a) (Supp. 1993). The Probate Court therein also determined the value of decedent's total estate, excluding insurance proceeds and jointly owned properties, to be $102,902,698.02 on his date of death.[3] The Probate Court therein reduced the total estate, pursuant to Tenn. Code Ann. sec. 31–4–101(b) (Supp. 1993), by expenses and exemptions totaling $8,035,134.55 [4] and determined decedent's net estate to be $94,867,563.47. The Probate Court thereupon multiplied decedent's net estate by 33 percent in determining Mrs. Williams' elective share to be $31,306,295.95.[5]

On September 9, 1993, Mrs. Williams, as executrix of the estate, submitted to the Probate Court a proposed allocation of estate assets, wherein she chose unencumbered shares of stock and cash to fund the elective share. The Probate Court approved the elective share allocation by order dated October 14, 1993.

The dispute in this case concerns the amount of the marital deduction available to the estate pursuant to Mrs. Williams' decision to take an elective share. Petitioner argues that the marital deduction should be $32,581,579.95,

---

[2] Pursuant to decedent's will, Mrs. Williams was entitled to reach the corpus of the trusts only if the income therefrom was inadequate for her comfortable maintenance or in the event of her illness or injury or other special circumstances of a similar nature requiring extraordinary expenditures.

[3] Neither the Probate Court nor petitioner offered an explanation for the difference in the gross estate amount reported on the estate tax return ($102,702,150) and the total estate amount determined by the Probate Court ($102,902,698.02), although both numbers purport to represent the same thing—the value of all of decedent's assets on his date of death.

[4] Although not enumerated by the Probate Court, the deduction of $8,035,134.55 apparently includes, in part, funeral expenses of $33,134.55, a year's support of $1,250,000, nonprobate assets of $25,284, attorney's fees of $3,200,000, and executrix commissions of $3,500,000. Based on the record before us, we are unable to determine with certainty the remaining portions of the deduction; however, the resulting discrepancy of $26,716 is insignificant to the resolution of the dispute in this case. For purposes of determining the specific legal question before us, we note only that the Probate Court made no deduction for any portion of decedent's secured debts in determining the net estate.

[5] The Probate Court should have multiplied the net estate by one-third, rather than 33 percent, as required by the elective share statute.

comprising the elective share and year's support amounts determined by the Probate Court ($31,306,295.95 and $1,250,000, respectively) and the value of certain nonprobate assets reported on the estate tax return ($25,284). While respondent concedes that the value of the nonprobate assets and year's support qualify as part of the marital deduction, she argues that the elective share amount "calculated" pursuant to Tenn. Code Ann. sec. 31–4–101(a) (Supp. 1993) as "one third (⅓) of the decedent's net estate" must be reduced by a pro rata (one-third) share of decedent's secured debts in determining the amount deductible by petitioner.[6] Under respondent's interpretation, the elective share amount deductible by petitioner is $21,215,991, and the total marital deduction is $22,491,275. Based on this interpretation, respondent determined a deficiency in petitioner's Federal estate tax in the amount of $23,213,702.[7]

The Federal estate tax marital deduction is set forth in section 2056(a), which states in pertinent part:

For purposes of the tax imposed by section 2001, the value of the taxable estate shall * * * be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

The property interest claimed by a surviving spouse pursuant to a statutory election against the decedent's will is considered to have passed from the decedent to the surviving spouse. Sec. 20.2056(e)–2(c), Estate Tax Regs. Consequently, the marital deduction available to the decedent's estate is based upon the interest received by the surviving spouse pursuant to the election.

---

[6] Respondent also argues that the Shelby County Probate Court incorrectly determined decedent's "net estate" by allowing certain administrative expenses, including attorney's fees of $3,200,000 and executrix commissions of $3,500,000, that have not been substantiated by petitioner. Although the proper determination of the net estate is a prerequisite to correctly "calculating" the elective share under Tenn. Code Ann. sec. 31–4–101(a) (Supp. 1993), we are concerned in this case only with the specific legal question of whether a portion of decedent's secured debts must be deducted *after*, and assuming that, the net estate and "calculated" elective share have been properly determined. Thus, our holding today does not preclude petitioner from introducing evidence substantiating the disputed administrative expenses in a future proceeding addressing that controversy.

[7] Although the difference between the amount determined by respondent ($22,491,275) and the amount now argued for by petitioner ($32,581,295.95) is about $10 million, the $23,213,702 deficiency results because of the $64,098,005 marital deduction claimed on the estate tax return.

Tennessee's elective share statute (originally enacted in 1977) provided that a surviving spouse could elect to take an "elective share of one-third (⅓) of decedent's net estate", and further, that the elective share was to be "exempt from the debts and charges of the decedent incurred after April 1, 1977." Tenn. Code Ann. sec. 31–601 (Supp. 1983). Concurrently, Tenn. Code Ann. sec. 31–602(b) (Supp. 1983) was enacted, wherein a decedent's "net estate" was defined as "all of the decedent's property reduced by funeral and administration expenses, the payment of taxes, homestead, exemptions, and year's support."

Several changes were made in the Tennessee elective share statute prior to decedent's date of death. First, in 1978, the statute was revised by removing "the payment of taxes" from Tenn. Code Ann. sec. 31–602(b), which provides the definition for computing the net estate. 1978 Tenn. Pub. Acts 763, sec. 5. The effect of this change was that the payment of taxes was no longer to be subtracted from the gross estate in order to determine the net estate. Second, in 1985, the elective share concept and net estate definition were brought together (and renumbered) under Tenn. Code Ann. sec. 31–4–101 (Supp. 1993). The 1985 revision also modified the exemption of the elective share "from the debts and charges of the decedent incurred after April 1, 1977" to an exemption "from the unsecured debts of the decedent incurred after April 1, 1977." The effect of this change was to remove the elective share's exemption from the decedent's secured debts. The removal of the secured debt exemption is at the center of the controversy in this case.

The 1985 revisions resulted in the modified Tennessee elective share statute in controversy, Tenn. Code Ann. sec. 31–4–101 (Supp. 1993):

31–4–101. Right to elective share. — (a) A decedent's surviving spouse has the right to elect to take an elective share. The elective share is one third (⅓) of the decedent's net estate as defined in subsection (b) hereof. The right to elect an elective share is available to the surviving spouse of an intestate decedent and a testate decedent if the surviving spouse elects against the decedent's will. When the elective share is determined, it is exempt from the unsecured debts of the decedent incurred after April 1, 1977. In determining the elective share, it is not reduced by any estate or inheritance taxes.

(b) The net estate includes all of the decedent's real and personal property subject to disposition under the terms of the decedent's will or the

laws of intestate succession reduced by funeral and administrative expenses, homestead, exemptions and year's support. [Citation omitted.]

Subsequent to the 1985 enactment of Tenn. Code Ann. sec. 31–4–101 (Supp. 1993), the Shelby County Probate Court approved Mrs. Williams' right to elect to take against the decedent's will and her allocation of estate assets to fund the elective share. We agree with the parties that the marital deduction available to petitioner depends on a proper determination of the interest passing to Mrs. Williams pursuant to her election. We note, however, that we are not bound by the Probate Court's approval of the funding and allocation of Mrs. Williams' elective share in determining the maximum allowable marital deduction. *Commissioner v. Estate of Bosch,* 387 U.S. 456 (1967). In the *Estate of Bosch* case, the Supreme Court held that a Federal court deciding the estate tax consequences of an apparent release of a general power of appointment was not bound by the State trial court's adjudication of the property rights involved and that "state law as announced by the highest court of the State is to be followed." *Id.* at 465. Therefore, the Court concluded that "when the application of a federal statute is involved, the decision of a state trial court as to an underlying issue of state law should *a fortiori* not be controlling." *Id.*; *Estate of Hubert v. Commissioner,* 101 T.C. 314, 319 (1993).

Additionally, when a State court proceeding does not represent bona fide, adversary litigation, a decree rendered therefrom is not conclusive as to property interests for Federal estate tax purposes. *Estate of Rowan v. Commissioner,* 54 T.C. 633, 638–639 (1970). In the present case, there is no indication that the Probate Court proceeding was an active contest or adversary in nature. Furthermore, the Probate Court did not explain or provide a rationale for approving the allocation of assets. More significantly, there is no indication that the Probate Court considered and/or interpreted the elective share statute. The parties did not advance, and we were also unable to locate, any interpretation of the Tennessee statute. Accordingly, no court, including those of Tennessee, has expressed an opinion interpreting the statute in question. This Court, under the *Estate of Bosch* rationale, in effect sits as the highest court in the State, and we must

interpret the State law in order to apply the Federal tax law. *Commissioner v. Estate of Bosch, supra* at 465.

Initially, we look to the language of the applicable statute. *Consumer Prod. Safety Commn. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108 (1980); *Abourezk v. Reagan,* 785 F.2d 1043, 1053 (D.C. Cir. 1986). In this case, respondent argues that there are essentially two Tennessee statutes to consider in determining petitioner's marital deduction, Tenn. Code Ann. sec. 31–4–101 (Supp. 1993) (hereinafter sometimes referred to as the elective share statute), as reprinted above, and Tenn. Code Ann. sec. 30–2–305 (1984) (hereinafter sometimes referred to as the debt payment statute),[8] which contains the following language:

30–2–305. Debts chargeable against all assets.—Every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts. [Citation omitted.]

Respondent argues that the elective share amount must be reduced by a pro rata portion of the decedent's secured debts pursuant to the statutory mandate in Tenn. Code Ann. sec. 30–2–305 (1984) that all nonexempt assets are liable for the payment of the decedent's debts. The 1985 version of the elective share statute exempts the elective share from unsecured debts. Respondent argues that the elective share is no longer exempt from secured debts due to the 1985 statutory revision. Under respondent's argument, all estate assets, including those chosen to fund the elective share, are liable for a pro rata share of decedent's secured debts. Accordingly, in respondent's words, the marital deduction would be reduced by "any estate obligation which *must* or *may* be paid out of the property distributed" to the surviving spouse. For this proposition, with which we agree, respondent refers to *Jeschke v. United States,* 814 F.2d 568, 576 (10th Cir. 1987).

Alternatively, respondent argues that the elective share statute provides the surviving spouse with a conceptual one-third "fractional interest" in every asset in the net estate, including every encumbered asset. Thus, respondent argues

---

[8] The elective share statute and the debt payment statute appear in different titles of the Tennessee Code (Tit. 31—Descent and Distribution, and Tit. 30—Administration of Estates, respectively). Both titles, however, apply to probate matters, and there is no indication that the elective share and debt payment statutes were not meant to be read in pari materia.

that the Probate Court's approval of unencumbered assets to fund the elective share must be reduced by a pro rata share of decedent's secured debts to determine the net value of the fractional interest passing to the surviving spouse pursuant to her election.[9]

Petitioner argues that the debt payment statute is not applicable in this case because unencumbered assets were chosen to fund the elective share. Petitioner points out that a secured creditor can only reach unsecured assets when there is an insufficiency in the secured collateral—that is, when the value of the secured asset(s) is less than the value of the debt. Where there is such an insufficiency, petitioner notes that the creditor is unsecured as to the amount of the insufficiency. Petitioner concludes that the exemption of the elective share from unsecured debts specifically prevents a secured creditor from reaching unencumbered elective share assets for the amount of any unsecured insufficiency. Thus, petitioner argues that no authority exists to reduce the elective share amount "calculated" pursuant to the statutory formula (i.e., "⅓ of the net estate") by any portion of the decedent's secured debts when unencumbered assets are chosen to fund the elective share.

Petitioner argues that the Tennessee legislature could have enumerated a reduction for secured debts in the statutory definition of the "net estate" in Tenn. Code Ann. sec. 31–4–101(b) (Supp. 1993), but in failing to do so, no such reduction is required or intended.[10] In essence, petitioner argues that the elective share is a fixed "pecuniary amount", rather than a fractional interest in the net estate, and that the surviving spouse is entitled to estate assets with a cumulative value equal to the "calculated" elective share amount and no less. This, of course, would work only where at least one-third of the estate comprises unencumbered assets, which, under

---

[9] Presumably, under respondent's fractional interest argument, no reduction is required for decedent's unsecured debts because of the specific exemption of the elective share from unsecured debts provided for in Tenn. Stat. Ann. sec. 31–4–101 (Supp. 1993).

[10] Petitioner states on brief that the Tennessee legislature specifically considered including an enumerated reduction for the decedent's debts in the net estate definition, but failed to enact proposed legislation to that effect, in 1977, and, more recently, in 1993. There can be no doubt that such legislation, if enacted prior to the date of decedent's death, would have precluded the present controversy. We also note, however, that no legislative history or other evidence was offered in support of petitioner's view that the Tennessee legislature never intended a debt reduction to occur. Accordingly, we decline to give deference to the language of failed legislation, which, without more, gives little indication of the intentions of the drafter or of the reasoning of the legislature in declining to enact it.

petitioner's theory, could be chosen to fund the elective share.

Petitioner's out-of-context use of the one-third of the net estate language must be considered and reconciled with the change in the statute which subjected the elective share to secured debts. When considering both passages together, we find it difficult to accept petitioner's view. The removal of the secured debt exemption from the elective share statute in 1985, coupled with the specific direction in Tenn. Code Ann. sec. 30–2–305 (1984) that all nonexempt assets are liable for the payment of the decedent's debts, supports respondent's argument that the elective share must be reduced by a pro rata portion of the decedent's secured debts. Petitioner's reliance on the ambiguity caused by the absence of an enumerated reduction for secured debts in Tenn. Code Ann. sec. 31–4–101(b) (Supp. 1993) does not preclude us from determining that apportionment of decedent's secured debts is otherwise required pursuant to Tenn. Code Ann. sec. 31–4–101(a) (Supp. 1993) and Tenn. Code Ann. sec. 30–2–305 (1984).[11]

We also find little support for petitioner's argument that Tenn. Code Ann. sec. 30–2–305 (1984) is not applicable when, as in this case, there is no insufficiency in secured debt collateral and unencumbered assets were chosen to fund the elective share. Under petitioner's view, its marital deduction would be subject to change based on the executrix's elective share funding decisions, which in effect amount to post-death estate tax planning. Respondent's interpretation of Tenn. Code Ann. sec. 30–2–305 (1984) and Tenn. Code Ann. sec. 31–4–101 (Supp. 1993), on the other hand, provides for consistent determinations of the maximum allowable estate marital deduction and prevents the executrix from exonerating the elective share from decedent's secured debts simply by choosing to fund the share with unencumbered assets.

Although we find respondent's view of the applicable Tennessee statutes more acceptable, our inquiry does not end there. In accord with *Commissioner v. Estate of Bosch*, 387

---

[11] The parties have not provided elective share statutes of other States to compare with Tennessee's statute. A cursory review of some States' elective share statutes revealed enumerated reductions for the decedent's debts from the elective share. Additionally, several States have statutory provisions designating how the surviving spouse's share is to be funded, including, in many instances, a provision for the apportionment of the decedent's debts. Our review of other States' elective share statutes did not provide a basis for deciding this case.

U.S. at 465, we consider and give "proper regard" to any relevant State court rulings.

Although there are no opinions that interpret the 1985 statutory revision, some analogous materials have been advanced by the parties. Curiously, both parties rely on the same two cases to support their respective positions: *Cannon v. Apperson,* 82 Tenn. 553 (1885), and *Merchants & Planters Bank v. Myers,* 644 S.W.2d 683 (Tenn. Ct. App. 1982). The *Cannon* case was decided in 1885 by the Tennessee Supreme Court under the State's dissent and dower statutes (predecessors of the elective share concept). In that case, an electing widow argued entitlement to her distributive share of the decedent's personalty without any proportionate deduction for the debts and administrative expenses of the estate. The court did not allow an unfettered share, stating that under Tennessee statutory law "always in force in this State, 'every debtor's property, except such as may be specially exempt by law, is assets for the satisfaction of all his just debts.'" *Cannon v. Apperson, supra* at 593. While the court held that a widow's dower in land was specially exempt by law from bearing a share of the decedent's debts, the same was not true for personalty: "What the widow takes, either as distributee or upon dissent to the husband's will, of the personalty, is the share given 'after the payment of the debts and charges against the estate.'" *Id.*

In *Merchants & Planters Bank v. Myers, supra,* a residuary beneficiary argued that the elective share must bear a pro rata portion of the estate's Federal and State inheritance taxes. The case arose subsequent to the Tennessee legislature's 1978 removal of the "payment of taxes" as an enumerated reduction in the "net estate" calculation. That statutory change, however, does not prevent the elective share from bearing a portion of the estate's tax obligations as the court held that "In the absence of a testamentary provision to the contrary, federal estate and state inheritance taxes are to be apportioned rateably among those taking the property." *Id.* at 687. Relying on this statement in *Myers,* respondent argues that the elective share must be reduced by obligations of the estate—including, by analogy, a pro rata share of the decedent's secured debts—unless the decedent's will clearly indicates otherwise.

We find that *Cannon v. Apperson, supra,* and *Merchants & Planters Bank v. Myers, supra,* support respondent's view. First, in *Cannon,* the court looked to a long-standing debt payment statute and held that the surviving spouse's distributive share of the decedent's personalty was not specially exempt from the debts and obligations of the estate.[12] In the present case, respondent similarly relies on the debt payment statute (Tenn. Code Ann. sec. 30–2–305 (1984)) and argues that the elective share is not exempt from, and therefore must be reduced by, a pro rata portion of decedent's secured debts. Petitioner incorrectly attempts to distinguish *Cannon* by arguing that the holding in that case applies only when a surviving spouse takes under Tennessee's intestacy statute, and not, as in the present case, when an elective share has been chosen. The court in *Cannon* plainly stated that the widow's share of the decedent's personalty is to be determined after payment of the debts and obligations of the estate, whether the widow takes "either as distributee *or upon dissent from the husband's will.*" *Cannon v. Apperson, supra* at 593 (emphasis added); see also *American Surety Co. v. Grace,* 271 S.W. 739 (Tenn. 1925). Additionally, to the extent that *Cannon* refers to the widow's share taken under Tennessee intestacy statutes, under the elective share statute the decedent's "whole estate is opened in order that the dissenting spouse may obtain the statutory benefits *as if the deceased spouse had died intestate.*" *Merchants & Planters Bank v. Myers, supra* at 687 (emphasis added); see also *Hamilton Bank v. Milligan College,* 821 S.W.2d 591 (Tenn. Ct. App. 1991).

The *Myers* case also supports respondent's view. In that case, the removal of an enumerated reduction for the payment of taxes from the statute defining the "net estate" was held not to preclude apportionment of Federal estate and State inheritance taxes against the surviving spouse's elective share. Similarly, we think the absence of an enumerated reduction for secured debts in the current net estate statute does not preclude us from apportioning decedent's secured debts in this case; on the contrary, we think the debt payment statute, coupled with the removal of the secured debt

---

[12] It should also be noted that the dower concept is one associated with realty.

exemption from the elective share statute, requires us to do so.

Petitioner raises two arguments based on the *Myers* case. First, petitioner looks to the court's statement that "the dissenting spouse should be given the choice as to whether to accept 'a fund or property in kind or in cash.'" *Merchants & Planters Bank v. Myers,* 644 S.W.2d at 687–688 (citation omitted). Petitioner argues that this statement supports its view that the calculated elective share is a fixed pecuniary amount, rather than a fractional interest in the net estate, and that the surviving spouse has a right to choose estate assets (property or cash) with a cumulative value equal to the calculated elective share and no less. Second, petitioner relies on *Myers*, and cases cited therein, for the contention that the decedent's debts must be charged against the residuary estate, which "bears the whole loss incident to the dissent". *Id.* at 688. The language relied on in *Myers* addresses a residuary beneficiary's argument that the insufficiency created by the elective share should be funded pro rata out of specific bequest assets and residuary estate assets. Accordingly, in *Myers,* the value of the elective share was not in dispute.

Petitioner's reliance on *Myers* is misplaced, and in both cases petitioner confuses the funding of the elective share with the proper determination of the elective share. As noted earlier, the executrix or surviving spouse's postdeath funding decisions are not determinative of the value of the elective share. When a surviving spouse chooses to dissent from the decedent's will, the spouse's share typically increases, and a "loss" is borne by the nonspousal beneficiaries vis-a-vis the will provisions. We must first determine the amount of that loss—by properly determining the elective share—before the executrix can select the assets from which it will come.

Finally, we note that the parties have advanced theories attempting to explain why the secured debt exemption was removed from the elective share statute in 1985. Petitioner claims that the change was intended to protect secured creditors who, prior to 1985, were unable to reach encumbered assets if they were selected to fund the elective share. Respondent, on the other hand, argues that the 1985 revision protected the interests of residuary beneficiaries by requiring a pro rata allocation of secured debts, which effectively

increases the residuary estate at the expense of the elective share. On brief, the parties provided various comparative examples attempting to support their respective theories and to illustrate or defend alleged disparate treatment accorded either the surviving spouse, the secured creditors, or the residuary beneficiaries under the two proposed interpretations of the elective share statute. After reviewing the examples offered by the parties, and some examples of our own, we note that under both parties' interpretations of the revised elective share statute, secured creditors will always be paid at least to the extent of the value of the collateral.[13] They were not always so paid under the pre-1985 elective share statute.[14] Thus, the removal of the exemption from secured debt in computing the elective share benefited secured creditors. It appears likely that the secured creditors were, at minimum, intended beneficiaries of the added language. Neither party's interpretation of the revised statute contradicts that point. Respondent is also correct in contending that under her interpretation, the residuary beneficiaries' share is increased at the expense of the elective share.[15] While this latter result may or may not have been an intended goal of the legislature in revising the elective share statute, it does not preclude us from interpreting the applicable Tennessee statutes and the relevant case law in support of respondent's view.

---

[13] Additionally, under both parties' interpretations, when there is an insufficiency in the collateral, the secured creditors will receive additional payments above the value of the collateral if they are able to take before the residuary beneficiaries from any unsecured assets remaining after payment of the elective share.

[14] Consider, for example, an estate with 12x of total assets, secured debt of 9x, and secured collateral valued at 9x. Under the pre-1985 elective share statute, the surviving spouse was entitled to 4x (no matter which assets were chosen to fund the spouse's share), leaving only 8x remaining for the secured creditors. Thus, under the pre-1985 elective share statute, secured creditors would not always be paid to the full extent of the value of the secured collateral. (We note that under both parties' interpretations of the revised elective share statute, the secured creditors in the above example would be entitled to assets worth 9x—that is, the value of the secured collateral.)

[15] Returning to our earlier example (see *supra* note 14), consider again an estate with 12x of total assets, secured debt of 9x, and secured collateral valued at 9x. Under petitioner's interpretation of the revised elective share statute, the secured creditors would receive 9x (the value of the secured debt collateral), the surviving spouse would receive 3x (all that remains to fund the "calculated" elective share of 4x), and the residuary beneficiaries would receive nothing. Under respondent's interpretation, the secured creditors would receive 9x, but, after apportionment of the secured debt, the surviving spouse would receive only 1x (the "calculated" elective share of 4x less one-third of the secured debt) and the residuary beneficiaries would receive 2x. As this example illustrates, under respondent's view, the residuary share increases in direct proportion to the decrease in the surviving spouse's share.

Accordingly, we hold, under Tennessee law, that the surviving spouse's calculated elective share must be reduced by a pro rata (one-third) share of decedent's secured debts in determining petitioner estate's maximum allowable marital deduction.

> *An order will be issued granting respondent's motion for partial summary judgment and denying petitioner's motion for summary judgment.*