IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 9, 2012 Session

IN RE ESTATE OF WILLIE JUANELL CAMPBELL

**Appeal from the Chancery Court for McMinn County**
**Nos. P-307 & 23,667     Jerri S. Bryant, Chancellor**

**No. E2011-02765-COA-R3-CV-FILED-JULY 31, 2012**

In this appeal, numerous beneficiaries under a will challenge the trial court's order awarding attorney's fees of $9,024.75 out of the funds of the estate to another beneficiary who is their adversary. At an earlier time, the court had entered an order setting the attorney's fees of that beneficiary at $34,669.25 without specifying who was responsible for the payment of those fees. On the motion of that beneficiary, the court granted a new trial on the subject of attorney's fees. When the matter came on for the "new trial," the court announced that it would listen to argument but would not receive substantive evidence on the subject. Following that "hearing," the court awarded the fees now before us. The court's order does not articulate any findings with respect to whether the attorney's services were reasonable, necessary or benefited the estate. The "challenging" beneficiaries filed a notice of appeal.[1] We vacate the order awarding attorney's fees and remand to the trial court with instructions to conduct an evidentiary hearing and enter an order on attorney's fees complying with Tenn. R. Civ. P. 52.01.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and D. MICHAEL SWINEY, J., joined.

H. Wayne Grant, Chattanooga, Tennessee, for the appellants, Oletha Campbell Parris, William Dennis Campbell, Beverly Millsaps and Melissa Mashburn.

Sandra Bucknor, Riceville, Tennessee, appellee, pro se.

---

[1]We have previously entered an order recognizing that the notice of appeal was not filed on behalf of the estate but rather on behalf of the challenging beneficiaries; therefore the "[e]state itself . . . remains an appellee in this appeal." The estate has notified the court that it will not participate in this appeal.

No appearance on behalf of the appellee, Estate of Willie Juanell Campbell.

**OPINION**

I.

Willie Juanell Campbell ("the Deceased") died on November 28, 2006. Her son, William Dennis Campbell, and daughter, Oletha Campbell Parris ("the Personal Representatives"), were issued letters testamentary to act as the personal representatives of the estate. The Deceased was predeceased by a son, who was the father of three daughters, Beverly Millsaps, Melissa Mashburn and Sandra Bucknor. Soon after the estate was opened, Ms. Bucknor retained attorney S. Randolph Ayres to represent her interests. The Deceased's living children and the three children of the deceased son are all beneficiaries under the will of the Deceased.

Approximately six months after the estate was opened, the Personal Representatives, along with the Deceased's grandchildren, Millsaps and Mashburn (collectively "the Plaintiffs"), filed a separate action ("the partition action") alleging that a 220 acre farm passed to all the beneficiaries, including Ms. Bucknor, by undivided interests and that it was in the best interest of all beneficiaries to sell the farm as a whole and divide the proceeds. Ms. Bucknor is the sole defendant ("the Defendant") in the partition action. The Defendant, by counsel, answered the petition by admitting that the sale should be conducted but stated that an auctioneer other than the one chosen by the Plaintiffs should conduct the auction. The Defendant coupled a counterclaim with her answer, in which she alleged that the Personal Representatives, acting under a power of attorney, had spent approximately $125,000 of the Deceased's funds prior to her death for which they had not fully accounted. The counterclaim demanded an accounting and sought reimbursement of attorney's fees that the Defendant had incurred.

From that point forward, the litigation grew more contentious. The trial court consolidated the estate proceeding and the partition action and ordered mediation. Mediation was unsuccessful. The trial court appointed the clerk and master as special master to conduct hearings. The clerk and master conducted four separate hearings and filed reports concerning all of them. The reports were all approved by the trial court. The report filed November 2, 2009, which covered most of the substantive issues in the consolidated cases, was the next to last report filed. In it, the clerk and master stated:

In conclusion, the C&M submits that there was *no smoking gun* found with regard to the Personal Representatives/Former Fiduciaries' alleged mishandling or misuse of Estate Funds. Was everything done *perfectly*? Unfortunately, no it was not; mistakes were made. However, it does appear that Oletha Parris and Dennis Campbell made a sincere effort to care for their parents, and their Estate.

This is clearly a situation where the *domino [effect]* took over, and continued on to the point of causing irreparable harm to this family and their inheritance. The failure and/or lack of communication caused doubt and suspicion to flourish, which led to actions being questioned. Allegations and accusations sparked frustration and possible resentment; thus, making effective communication and cooperation between the parties difficult, if not impossible. This family dispute is extremely unfortunate and, quite frankly, could have been avoided.

(Emphasis in original.)

Shortly after the clerk and master filed her report, the Defendant's counsel filed a motion to withdraw and to impose a lien on any proceeds distributed to the Defendant. In support of his motion, counsel filed his own affidavit and an itemized bill which divided the time spent into three categories: probate, property, *i.e.*, the partition action, and accounting, *i.e.*, the counterclaim. His affidavit states that the time spent was reasonable and necessary.

The trial court granted counsel's request to withdraw and impose a lien in an order entered December 9, 2009. That order contained two additional rulings that are of interest in this appeal. The first concerns ownership of the funds in an AmSouth joint bank account. The court found that "the account is in fact a joint account with the right of survivorship to [the Personal Representatives]." The court further found, however, that $5,000 in that account "are estate funds" because they were deposited into the account by the Personal Representatives from the Deceased's personal funds shortly before her death. The second ruling of interest concerns Personal Representative Dennis Campbell's request for reimbursement of expenses allegedly paid on behalf of the Deceased prior to her death. The court denied the request, stating:

Upon review and consideration of the request of Dennis Campbell for reimbursement for expenses previously paid on behalf of Ms. Campbell, prior to her death, in the amount of

$4,080, initially filed with the court on 6/16/09 and the Exception filed thereto by Attorney Ayres on 6/25/09, the court finds and it is hereby ORDERED that the *claim* of Mr. Campbell was not properly nor timely filed with the court . . . .

(Capitalization and emphasis in original.) The court's order also awarded the clerk and master a fee in the amount of $5,150.63 and held the Defendant liable for 95% of that fee, or $4,893.10.

The record indicates that a trial was conducted in this matter on August 1, 2011, but the record contains no transcript of the trial testimony. It further appears that the Defendant called her former attorney as a witness to testify at that trial. The trial court entered an order on September 6, 2011, in which it ruled on the issues at trial. The court ordered the estate closed and awarded the attorney's fees of the Defendant in the amount of $34,669.25, without specifying which of the parties were responsible to reimburse the Defendant. The reasons the court gave for allowing the fees were that (1) the claim for fees was presented and delineated as ordered by the court and (2) the Plaintiffs filed no exception to the claim. The order attaches and incorporates a transcript of the court's various rulings which are not otherwise stated on the face of the order. The transcript contains the following commentary:

> The Court hopes that by putting this case to rest, finally, that it will cause this family to move on. It is a shame that the Court has to be involved to this extent when family members become estranged and become suspicious and become obstreperous towards each other. It has cost everyone in this case dearly financially and emotionally. When the parties choose to invest such time and money to fight over things, such as the distribution of 83 wheat pennies in this case, it gives many people a picture of what has actually taken place between the parties.
>
> The clerk and master spent in excess of 167 hours in having her hearings and preparing her report. And, under that, Ms. Bucknor had been entitled to an additional $2,364.39. There are two other parties that were entitled to some lesser amount of monies. There have been no other monies found to be missing. Given the years of involvement by the POAs and the hundreds of thousands of dollars involved, $2,000 involved in mistakes, is not an extreme amount, however, the way the Personal Representatives handled this was probably inappropriate.

-4-

Quite frankly, I'm surprised that their documentation isn't off even more, considering the CDs, the cash, the tobacco allotment, the [payments to caregivers of the Deceased], the taxes, and the contentiousness between the parties.

The Defendant filed a motion to alter or amend or for a new trial. The motion is not in the record.[2] The response of the estate and the Plaintiffs to the motion is in the record. The response argues that the motion should not be granted because no showing is made of grounds for relief from the judgment and further that the proof at trial did not justify an award of attorney's fees. A transcript of the testimony of attorney Ayres, presumably an excerpt from trial testimony, is attached as an exhibit to the response.

The trial court granted the motion for new trial. The order states "that Ms. Bucknor is entitled to a new trial on the issue of reimbursement to her of her attorneys fees incurred in the captioned cases." The court set a "Trial Date," agreed upon by the parties. However, when the case came before the court on the issue, the court refused to accept any evidence. Counsel for the Plaintiffs pointed out that "the order of this Court said that . . . this was to be a trial. You actually granted a new trial . . . ." The court voiced its disagreement as follows:

I granted a hearing on her motion for attorney's fees.

Guys, I have been handling this case for four or five years. And every time I put down an order thinking it's over with, you all find something else to come back in front of me for.

Today is legal argument on the issue of attorney's fees. It is brief and it is going to be to the point and that's it. And I hope that when I put down the order on these attorney's fees, that the next place you all decide to go is the court of appeals.

*　　*　　*

So it is legal argument. Mr. Grant, as far as I'm concerned.

---

[2]Because the motion is not in the record, it is not entirely clear what prompted its filing. We suspect, but do not know for sure, that the Defendant challenged the fact that the court's earlier order had not burdened the estate with an obligation to pay any portion of the award of fees.

The court allowed the Defendant to mark some exhibits for identification only, but it did not receive any substantive evidence.

The final order, now before us on this appeal, acknowledges that the matter was heard pursuant to the court's order granting a new trial, but states further,

> after hearing arguments of counsel, it is hereby ORDERED that Ms. Bucknor is entitled to be reimbursed $9,024.75 by the Willie Juanell Campbell estate for the time expended by S. Randolph Ayres on the probate case No. P-307. It is hereby ordered that the request of Sandra Bucknor for reimbursement in the amount of $23,793.00 and $1,851.50 is hereby denied for the time expended by S. Randolph Ayres in the civil action and [counterclaim] No. 23,667.

(Capitalization in original.) Neither the order nor the transcript of the hearing articulate any specific findings or reasons for allowing the fees.

## II.

The Plaintiffs raise the following issue:

> Did the Trial Court err when it found that [the Defendant's] individual attorney was entitled to an attorney fee to be paid from the Estate without a finding that said attorney's services benefited the Estate?

## III.

We review a trial court's ruling on a request for reimbursement of attorney's fees out of an estate for abuse of discretion. *Merchants & Planters Bank v. Myers*, 644 S.W.2d 683, 688 (Tenn. Ct. App. 1982). "As a general rule, for attorneys' fees to be allowed out of an estate, the attorney must have been employed by the personal representative of the estate; however, there is an exception where an attorney's services have inured to the benefit of the estate and, in those cases, the court has discretion to allow fees." *Id*. Under the abuse of discretion standard of review we are not allowed to substitute our judgment for that of the trial court. *Lee Medical, Inc. v. Beecher* , 312 S.W.3d 515, 524 (Tenn. 2010). The deferential standard

does not, however, immunize a lower court's decision from [all] meaningful appellate scrutiny.

Discretionary decisions must take the applicable law and the relevant facts into account. An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision. A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence.

To avoid result-oriented decisions or seemingly irreconcilable precedents, reviewing courts should review a lower court's discretionary decision to determine (1) whether the factual basis for the decision is properly supported by evidence in the record, (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision, and (3) whether the lower court's decision was within the range of acceptable alternative dispositions.

*Id*. (citations omitted).

IV.

The Plaintiffs do not articulate the standard or review and therefore do not couch their argument in terms of the abuse of discretion standard. They argue, simply, that the applicable case law and Tenn. R. Civ. P. 52.01, require findings – findings that the trial court did not make in the present case, namely, findings that the work done by attorney Ayres for which the Defendant seeks reimbursement was necessary, reasonable, and benefited the estate rather than just the Defendant. *See* Tenn. R. Civ. P. 52.01 ("In all actions tried upon the facts without a jury, the court shall find the facts specially . . . ."); *see also **In re: Estate of Wallace***, 829 S.W.2d 696, 703 (Tenn. Ct. App. 1992)(stating the requirements for awarding fees). The Plaintiffs further argue that there is no evidence in the record in this case to support any such findings. The Plaintiffs appropriately point out that after granting the Defendant a "new trial," the court was unwilling to receive evidence at the hearing.

The Defendant does not counter the Plaintiffs' arguments directly. She asserts that her attorney's efforts saved the estate at least $9,080 as a result of the order disallowing

Personal Representative Campbell's claim for reimbursement of $4,080 and awarding the $5,000 from the AmSouth bank account to the estate. She argues that it is a matter of simple mathematics to see that the $9,024.75 fee awarded is less than $9,080.

In their reply brief, the Plaintiffs make the following statement:

> [B]ased upon [the Defendant's] Statement of the Facts . . . it is apparent that [she] argues there was aggregate or total savings of $9,080.00 for which the Court ordered reimbursement for attorney's fees in the amount of $9,024.75. [The Plaintiffs do] not dispute these facts but [do] dispute that the attorney's fees are allowable . . . .

The Plaintiffs assert that the record does not support a finding of a connection between attorney Ayres' efforts and the savings to the estate. With regard to the $4,080 in disallowed expenses, the Plaintiffs assert that the only time entries of Mr. Ayres in the itemized bill that have any arguable connection to the objection to the allowance reflect 2.84 hours that resulted in charges of $497. With regard to the AmSouth checking account, the Plaintiffs assert that "there is no time identified in the description of services rendered by attorney Ayres indicating that he performed any service relating to [the] $5000 . . . taken from a Certificate of Deposit and placed in the [Deceased's'] checking account." The Plaintiffs further argue that the manner in which the hearing on fees was conducted deprived them of a fair opportunity to cross-examine the requesting parties' witnesses and to present proof of their own on the issue. They rely upon the cases of *Sherrod v. Wix*, 849 S.W.2d 780, 785 ([Tenn. Ct. App.] 1992), *Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988), and *Wilson Management Co. Star Distributors Co.*, 745 S.W.2d 870, 873 (Tenn. 1988).

We are faced here with a complete absence of any factual findings to show why the court awarded the fees. The $9,080 savings to $9,024.75 fees correlation asserted by the Defendant is pure conjecture; it is not based on any statement made by the trial court. We agree with the Plaintiffs that there is nothing in the record other than possibly $497 in billings to connect the work done by attorney Ayres to the $9,080 in money that ended up as estate funds. After granting a "new trial" on the issue, the court refused to admit any substantive evidence. Thus, even if there were specific findings, there is no proof from the hearing to support such findings. We are aware that "[i]t is not always necessary that there be a 'fully developed record' when the judge that presided over the case is asked to award attorney fees . . . ." *Miller v. Miller*, 336 S.W.3d 578, 587 (Tenn. Ct. App. 2010). However, there must be something in the record that would allow us to conclude that there is evidence somewhere to support the award and that the trial court weighed the evidence in light of the applicable law and exercised its discretion with those things in mind. *See Lee Medical*, 312 S.W.3d at

-8-

524. Where there is no such basis for the award in the record, "the correct approach is to vacate the award and 'remand [the] case to the trial court for a new determination of an attorney's fee . . . .' " *First Peoples Bank of Tennessee v. Hill*, 340 S.W.3d 398, 410 (Tenn. Ct. App. 2010)(brackets in original)(*quoting* ***Ferguson Harbour, Inc. v. Flash Market, Inc.***, 124 S.W.3d 541, 553 (Tenn. Ct. App. 2003)).

V.

The order granting the Defendant reimbursement from the estate of attorney's fees in the amount of $9,024.75 is vacated. Costs on appeal are taxed to the appellee, Sandra Bucknor. This matter is remanded, pursuant to applicable law, with instructions to conduct an evidentiary hearing and enter an order with respect to attorney's fees that complies with Tenn. R. Civ. P. 52.01.

_____
CHARLES D. SUSANO, JR., JUDGE